### NEWBERY v. WILKINSON et al.

(Circuit Court, E. D. Washington, E. D. September 6, 1911.)

#### No. 1,441.

1. EXECUTORS AND ADMINISTRATORS (§ 513*)—ACTIONS—DEFENSES—DISCHARGE.
   The administratrix of a deceased guardian · was not liable for the guardian's alleged default, where suit to enforce such liability was not commenced until five years · after she had administered the guardian's estate according to the local law, had accounted for all property she had received, and had been discharged from her trust; the correctness of her accounts not being assailed.
   [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2267–2291; Dec. Dig. § 513.*]

2. DESCENT AND DISTRIBUTION (§ 119*)—INDEBTEDNESS OF ANCESTOR—LIABILITY OF HEIRS.
   Heirs of a deceased guardian are not liable for his default beyond the amount of their inheritance.
   [Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 433–439; Dec. Dig. § 119.*]

3. EXECUTORS AND ADMINISTRATORS (§ 224*)—CLAIMS—NONCLAIM SUIT—APPLICATION—"CLAIM"—"CAUSE OF ACTION."
   Rem. & Bal. Code Wash. § 1470, providing that every executor and administrator shall immediately after his appointment cause to be published in some paper printed in his county a notice requiring creditors to present claims within a year after the date of notice, and section 1472, declaring that if a claim is not presented within such year it shall be

barred, apply to mere personal claims against the estate of a deceased guardian; the word "claim" being synonymous with "cause of action."

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 768–788; Dec. Dig. § 224.*

For other definitions, see Words and Phrases, vol. 2, pp. 1015–1019; vol. 8, p. 7598; vol. 2, pp. 1202–1211; vol. 8, p. 7604.]

4. COURTS (§ 375*)—STATE STATUTES—ENFORCEMENT IN FEDERAL COURT.

A state statute of nonclaim, requiring claims against executors and administrators to be filed within a specified time, will be enforced in a federal court of equity, where suit was brought against an administrator of a deceased guardian on a mere personal demand several years after the bar of the suit of nonclaim became absolute.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 983; Dec. Dig. § 375.*]

5. COURTS (§ 375*)—GUARDIAN'S BOND—ACTIONS—LIMITATIONS—ENFORCEMENT IN FEDERAL COURT.

Rem. & Bal. Code, § 1432, provides that an action against sureties shall be commenced within six years after the revocation or surrender of letters of administration or death of the principal, and section 1633 declares that all the provisions of the title containing the above-named section relating to administrators' bonds shall apply to bonds taken of guardians. Held that, since the state Legislature had supreme power to restrict the obligation of sureties on statutory bonds given by guardians, such sections were enforceable in a federal court and available as a defense to a suit on a guardian's bond against the surety more than six years after the death of his principal.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 983; Dec. Dig. § 375.*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 533.]

6. LIMITATION OF ACTIONS (§ 174*)—REMOVAL OF BAR—EQUITABLE REMEDY.

The rule that a court of equity will remove the bar of limitations to reach trust funds does not apply to a mere surety on a guardian's bond, whose duty is measured alone by the legal force of the bond, and whose only obligation to the obligee is contained in his covenant.

[Ed. Note.—For other cases, see Limitation of Actions, Dec. Dig. § 174.*]

In Equity. Suit by William Fraser Newbery against Clara Wilkinson, administratrix of the estate of B. C. Van Houten, deceased, and others. On final hearing. Dismissed.

Belden & Losey and Graves, Kizer & Graves, for complainant.

H. M. Stephens, for defendants Wilkinson and Van Houten.

P. F. Quinn and E. J. Cannon, for defendant Monaghan.

RUDKIN, District Judge. This is a suit on a guardian's bond. The administratrix of the estate of the deceased guardian, the heirs at law of the deceased guardian, and one of the sureties on the bond of the deceased guardian are made parties defendant. There is little or no controversy over the facts, although the materiality or relevancy of some of the facts is challenged by the complainant.

Pauline B. Newbery, a resident of Spokane county, died intestate on the 4th day of August, 1890, leaving her surviving a husband, A. A. Newbery, and two minor children, William Fraser Newbery, the complainant in this suit, and Laura Isabel Newbery, who died in infancy unmarried and without issue. The deceased left an estate in

Spokane county, consisting of a community interest in certain real property, a particular description of which is not material at this time. Upon her death one half of the community property passed to the surviving husband, and the remaining half descended to the two minor children, share and share alike, under the local laws of the state. At the time of Mrs. Newbery's death a portion of the community real property was incumbered by a mortgage held by the Northwestern & Pacific Hypotheek Bank, and the surviving husband, the father of the two minor children, applied to the bank for a renewal of the mortgage and an increase in the amount of the mortgage loan. The bank agreed to renew the mortgage and to increase the amount of the loan, on condition that the father would clear or perfect his title to the mortgaged property, and the following remarkable procedure was resorted to for that purpose, under legal advice:

B. C. Van Houten, one of the father's business associates, was appointed guardian for the two minor children, and the defendant Monaghan and others became sureties on his bond in the penal sum of $40,000. The father then commenced an action in the superior court of Spokane county against the guardian and the two minor children, for the partition of three certain parcels of land owned by the community at the time of the wife's death. The complaint contained a description of the property, set forth the interest of each of the parties, alleged that partition could not be made without prejudice to the owners, and prayed that the property be sold and the proceeds divided among the respective owners as their interest might appear. The defendants appeared in the action and put in issue the allegations of the complaint. A reference was ordered by the court, and after a formal hearing the referee made a report recommending a sale of the property as prayed in the complaint. This report was confirmed, and the referee was directed to make the sale. Thereafter the referee reported that he had sold the three several parcels of land to one J. F. McEwen (who was another of the father's business associates) for sums aggregating $64,800 in cash, and that he had paid one half of the proceeds of the sale to the father and the remaining half to the guardian of the minor children. Receipts from the father and the guardian were returned and filed in court, acknowledging the receipt of the respective sums thus alleged to have been paid over. The report of sale was adopted and confirmed by the court, and the referee conveyed the property to the purchaser. Immediately thereafter McEwen, the purchaser, conveyed the property to the father, and by this means or subterfuge, his title was cleared or perfected. In truth and in fact McEwen paid nothing for the property at the partition sale, and it was never contemplated that he should. The guardian did not in fact receive the sum of $32,400, or any other sum, on account of the sale, nor was it contemplated that he should.

The entire proceeding was a mere fraudulent scheme or device, resorted to for the purpose of divesting the title of the two minor children and vesting it in the father, to the end that he might mortgage or incumber the property. I do not desire to be understood as holding or finding that the father intended to perpetrate a fraud on

his infant children, for there is no evidence that he did, but such was nevertheless the legal effect of the whole proceeding. While the guardianship was a general one, the active duties of the guardian began and ended with this single transaction some 20 years ago. The guardian thereafter died testate in King county, of this state, on the 25th day of January, 1904, and his estate passed through due course of administration. His will was admitted to probate, an administratrix with the will annexed was appointed and qualified, notice to creditors was published under date of April 30, 1904, and the administration was closed by final decree on the 13th day of July, 1905. No claim on behalf of the complainant was presented to the administratrix of the estate of the deceased guardian within the year allowed by the state statute of nonclaim, or at all. The only estate left by the deceased consisted of some worthless mining stock, for which the administratrix received the nominal sum of $5 at administration sale. No other property of the deceased, of any kind, character, or description, came into the hands of his personal representative or descended to his heirs or next of kin.

The complainant left the state of Washington at an early age and attended school at different places in the East, until he attained the age of about 15 years. He then entered the United States navy, where he remained until he attained his majority. During his term of service in the navy he was stationed the greater part of the time on the Atlantic coast. On attaining his majority he left the navy and wandered about the country from place to place for about two years, until he finally settled in Utah, of which state he is now a citizen. He had no actual notice of the partition or guardianship proceedings until shortly prior to the commencement of this suit. At that time he received a quitclaim deed from his father for his signature, and investigations made by his attorneys led to a disclosure of the proceedings in question. He did receive notice from his stepmother, however, when of the age of 19 years and about 5 years prior to the commencement of this suit, to the effect that he had a claim to certain property in the city of Spokane, derived from or through his mother, which he might establish, provided he instituted proceedings for that purpose within one year after attaining his majority. This notice admittedly referred to other property and other rights, and not to the bond in suit. The original action was commenced on the law side of this court on the 2d day of February, 1910, and within a few months after the complainant attained the age of 24 years. The case was later transferred to the equity side of the court, and the present bill was filed on the 25th day of March, 1910. The administratrix and the heirs on the one hand, and the surety, Monaghan, on the other, have appeared separately; but their defenses are in some respects the same.

Under the foregoing facts the complainant contends, in brief, that he, in his own right and as next of kin to his deceased sister, is entitled to recover the full amount for which their interest in the community property was sold, at the partition sale, with legal interest from that date. The defendants, on the other hand, contend, first, that the remedy of the complainant is at law, and not in equity; second, that

the interest of the complainant and his deceased sister in the community property at the time of their mother's death was of no value, and consequently that they were not injured or defrauded by the proceedings complained of; third, that the suit is barred by the state statute of nonclaim, for failure to present the claim to the administratrix of the estate of the deceased guardian within the time limited by law; and, fourth, that the suit is barred by the statute of limitations.

If this suit were instituted in the proper forum and within the proper time, I am of opinion that the complainant is entitled to recover under the allegations of the bill and according to his theory of the case; but, in view of the conclusion I have reached as to certain of the defenses interposed, a further consideration of the merits of the complainant's claim becomes immaterial.

[1] A few words will dispose of the case made against the administratrix and the heirs at law. The administratrix was not such at the time of the commencement of this suit, and had not been for years. Nearly five years prior to its commencement she had fully administered the estate under and in accordance with the local law. She had fully accounted for all property by her received, and had been discharged from her trust. The correctness of her accounts is not now assailed, and she cannot be called upon at this late day to further account to this or any other court.

[2] I presume it will not be contended that heirs are liable for the debts or obligations of their deceased ancestors beyond the amount of their inheritance. 14 Cyc. 186. It is not claimed that the heirs of the deceased guardian received an inheritance of any kind or of any value from him. On the contrary, it clearly and satisfactorily appears that the guardian died utterly insolvent, that his entire estate consisted of worthless mining stock, and that no part of this descended to his heirs or next of kin. As to the administratrix and the heirs, the bill must therefore be dismissed, regardless of other defenses interposed.

In view of this conclusion it is perhaps unnecessary to consider the effect of the failure to present the claim in suit to the administratrix of the estate of the deceased guardian; but, inasmuch as the bar of the statute of nonclaim may inure to the benefit of the surety, I will refer briefly to that question.

[3] The complainant contends that the state statute of nonclaim does not apply to equitable or unliquidated claims such as this, citing Neis v. Farquharson, 9 Wash. 517, 37 Pac. 697. With this conclusion I am unable to agree, whether we consider the question an open one, or as foreclosed by the decisions of the local courts.

Section 1470, Rem. & Bal. Code, provides that every executor and administrator shall, immediately after his appointment, cause to be published in some paper printed in his county a notice to the creditors of the deceased, requiring all persons having claims against the deceased to present them, with the necessary vouchers, within one year after the date of such notice.

Section 1472 provides that, if a claim is not presented within one year after the first publication of notice to creditors, it shall be forever

barred. This statute would seem to apply to mere personal claims against the estate of a deceased guardian or executor, and it has been so held.

In construing the word "claim" in a similar statute, in Fretwell v. McLemore, 52 Ala. 124, 140, Brickell, C. J., said:

"The language of the statute is clear, unambiguous, and comprehensive. Words more significant to express every demand to which a personal representative can or ought to respond, or which can charge the assets in his hands subject to administration, or more expressive of every legal liability, resting upon the decedent, could not have been employed."

In Rhodes v. Hannah's Adm'r, 66 Ala. 215, it was held that the claim of a ward against the estate of a deceased guardian was barred by the statute of nonclaim, unless presented within the time limited by law. To the same effect see Taylor's Adm'r v. Robinson, Adm'x, 69 Ala. 269; Connelly v. Weatherly, 33 Ark. 658; Patterson v. McCann, 39 Ark. 577; Purcelly v. Carter, 45 Ark. 299; Padgett v. State, 45 Ark. 495; Gillespie v. Winn, 65 Cal. 429, 4 Pac. 411; McGrath v. Carroll, 110 Cal. 79, 42 Pac. 466. See, also, Hill v. State, 23 Ark. 604; Nichols v. Shearon, 49 Ark. 75, 4 S. W. 167; Estate of Halleck, 49 Cal. 111; Lathrop v. Bampton, 31 Cal. 17, 89 Am. Dec. 141; Sharpstein v. Friedlander, 54 Cal. 58; Fowler v. True, 76 Me. 43; Atty. Gen. v. Brigham, 142 Mass. 248, 7 N. E. 851; 18 Cyc. 467.

The word "claim" has been given the same broad, comprehensive construction by the Supreme Court of this state. In Barto v. Stewart, 21 Wash. 605, 59 Pac. 480, the court construed the word "claim" as synonymous with "cause of action," and in express terms overruled the case cited by the complainant. An executor or administrator may be required to account for trust funds or property which come into his hands, regardless of the statute of nonclaim; but no such case is presented here. No property or trust funds came into the custody of the deceased guardian himself, and it is not claimed that any such came into the hands of his personal representative, or descended to his heirs or next of kin. The complainant is seeking to enforce a mere personal demand against the estate of his deceased guardian, and as such it is clearly barred by the statute of nonclaim, which applies to all claims, known or unknown, and to all persons, whether sane or insane, infants or adults, residents or nonresidents. It is claimed, however, that a federal court of equity is not bound by the state statute of limitations or of nonclaim, and in so far as claims purely equitable are concerned this much may be conceded.

[4] But the statute of nonclaim is enforced with even greater strictness than the general statute of limitations. Its object is to secure an early and final settlement of estates, to the end that the residuum may be distributed to the heirs or next of kin, free from incumbrances or charges which would lead to protracted litigation. Hall v. Bumstead, 20 Pick. (Mass.) 6. And it would be an unusual case, indeed, in which a federal court of equity would feel warranted in subjecting an estate to the payment of a mere personal

demand, several years after the bar of the statute of nonclaim became absolute. No such case is presented here.

In Morgan v. Hamlet, 113 U. S. 449, 5 Sup. Ct. 583, 28 L. Ed. 1043, a bill in equity was filed for an accounting of certain matters growing out of a partnership, and the statute of nonclaim of the state of Arkansas was interposed in defense. After referring to the state statute, which does not differ from the statute of this state, and to the decisions of the local courts, which do not differ from the decisions of the courts of this state, the court said:

"It is sought, in argument on behalf of the appellants, to distinguish their case, at least the case of the two infant children of Samuel D. Morgan, from any case within the statute of nonclaim, on the ground that at the death of their father, his title to the real estate, which constituted the plantation, descended to them as his heirs at law, and thereafter as to the operations conducted by John Morgan in 1864 and 1865, having no guardian, the latter was in equity their representative and guardian de son tort and trustee, so that upon his death, and until they arrived at age, there was no one competent to make a demand against his administrator, within the terms of the statute. But we are unable to appreciate the force of this supposed distinction. The statute in question contains no exception in favor of claimants under disability of nonage or otherwise. The claim of the complainants against John G. Morgan was adverse to his administration, although it may have originated in consequence of a relation of trust; and there is no ground that we are able to understand, upon which it can be excepted out of the operation of the statute in question. Their claim was clearly against the administrator of John G. Morgan, whether the latter be considered as the defaulting partner of themselves or of their father. Whatever its description, it was a claim against the estate of John G. Morgan, and for which his personal representative was in the first instance liable; and the statute is a bar to every such claim, unless presented within the time prescribed. On this ground the decree of the Circuit Court is affirmed."

For these reasons I am of opinion that the claim against the estate of the deceased guardian is barred both at law and in equity. The Supreme Court of the state of Washington has held that the undertaking of the surety is collateral security for the preference of the duties of the principal, and that no action can be maintained against the surety unless the liability of the principal exists at the time of the commencement of the action. Spokane County v. Prescott, 19 Wash. 418, 53 Pac. 661, 67 Am. St. Rep. 733. There is no doubt a conflict of authority on this question, but:

"No laws of the several states have been more steadfastly or more often recognized by this court, from the beginning, as rules of decision in the courts of the United States, than statutes of limitations of actions, real and personal, as enacted by the Legislature of a state, and as construed by its highest court." Bauserman v. Blunt, 147 U. S. 647, 652, 13 Sup. Ct. 466, 468, 37 L. Ed. 316.

[5] Aside from this, the suit is barred by the special statute of limitations of the state applicable to sureties on the bonds of executors, administrators, and guardians. Section 1432, Rem. & Bal. Code, provides that:

"An action against sureties shall be commenced within six years after the revocation or surrender of letters of administration or death of the principal."

Section 1633, Id., provides that:

"All the provisions of chapter 8 of this title relative to bonds given by executors and administrators shall apply to bonds taken of guardians."

The complainant admits that the suit at bar is controlled by these provisions, that the suit is barred by them, and that the complainant is entirely without remedy in the courts of the state of Washington. Again he insists, however, that those limitations are not binding on a federal court of equity. This rule may be conceded in certain cases, but I deny its application to the case now under consideration. No doubt a state Legislature may not limit or restrict the general jurisdiction of a federal court of equity, but its power to limit and restrict the obligation of sureties on statutory bonds is supreme; and if under the laws of the state the surety is released at the expiration of six years from the death of his principal, it is beyond the power of a court of law, or a court of equity, state or federal, to revive the obligation. The bond in suit is not a mere private contract inter partes, and the special statute of limitations does not affect the remedy merely. In speaking of a similar statute of Wisconsin in Hudson v. Bishop (C. C.) 32 Fed. 519, 523, the court said:

"When the Legislature of Wisconsin provided for the giving of a bond by a guardian, it had a right to enact and declare the duties and obligations imposed thereunder upon the sureties signing the same. The extent of the liability thereby imposed is to be determined by the statute of Wisconsin, no matter in what forum suit may be brought thereon. When the statute in express terms declared that, as against the sureties, no action can be maintained unless brought within four years after the discharge of the guardian, this defines the extent of the liability of the surety. It cannot be treated as a mere matter affecting the remedy upon the contract of suretyship, but it is part of the contract itself. In this regard sureties stand in a different position than the principal. The guardian receiving the property of his wards would be liable to account therefor without any statutory declaration to that effect. He has no vested interest in any particular period of limitation, and cannot complain if the statute should be entirely abrogated. When, however, a person is asked to assume the position of a surety for another, by signing a statutory bond, and the statute expressly limits his liability by providing that he cannot be sued thereon after a fixed period, it will not do to hold that the limitation is a mere matter of form, affecting the mode of procedure, and that it may be wholly taken away by legislative enactment. It is a substantial right protecting the surety by limiting the extent of the liability assumed, and enters into the obligation of the bond given under the statute. As such it is one of the conditions of the contract, and therefore an action cannot be maintained against the surety unless brought within the period thus fixed."

These views were concurred in by the late Justice Brewer at circuit on a petition for rehearing. Hudson v. Bishop (C. C.) 35 Fed. 820.

[6] Furthermore, while a court of equity will sometimes remove the bar of the statute of limitations in order to reach trust funds or trust property, this rule can have little or no application to a mere surety—

"whose duty is measured alone by the legal force of the bond, and who is under no moral obligation whatever to pay the obligee, independent of his covenant, and consequently there is nothing on which to found an equity for the

interposition of a court of chancery." Pickersgill v. Lahens, 15 Wall. 140, 144, 21 L. Ed. 119.

For these reasons I am of opinion that the right of recovery against either the personal representative, the heirs, or the surety is barred, and the bill is accordingly dismissed. I reach this conclusion with the.less hesitation because I have grave doubts as to the inherent equity of the complainant's claim. Notwithstanding the indefensible methods resorted to for the purpose of divesting infants of their title to the property in question, I doubt if they would have received any considerable sum had their mother's estate been administered in the regular course. The complainant invokes strict rules of law for the purpose of fixing the amount of his recovery, and he cannot complain if his own conduct and his own rights are measured by the same.rules.

Let a decree be entered accordingly.