[No. 19062. *En Banc.* June 24, 1925.]

FRANK DAVIS, *Appellant,* v. A. V. SHEPARD, *as Adminis-
trator of the Estate of Frank J. Davis,
Deceased, Respondent.*[1]

EXECUTORS AND ADMINISTRATORS (72)—CLAIMS—TRUSTS—PRESEN-
TATION OF CLAIM—NECESSITY. The statute of non-claim (Rem.
Comp. Stat., § 1477), in the settlement of estates, applies where a
trustee dies having wrongfully confused the trust funds with his
own so that they cannot be traced in specie; since his indebtedness
to the trust becomes a demand against his estate, to be presented
by the *cestui que trust* as a general creditor.

SAME (84)—CLAIMS—EXCUSES FOR FAILURE TO PRESENT—INFANCY.
The filing of a claim against the estate of a guardian for misappro-
priating the funds of the ward is not excused by the infancy of the
ward or his ignorance of the misappropriation until the final ac-
counting upon the guardian's estate, after expiration of the limita-
tion of the statute of non-claim, Rem. Comp. Stat., § 1477.

SAME (76, 84)— CLAIMS — EXCUSES FOR FAILURE TO PRESENT —
EQUITABLE RELIEF. The statute of non-claim, Rem. Comp. Stat.,
§ 1477, applying to the settlement of estates, supersedes all other
statutes of limitation, and courts of equity cannot relieve against
the same in an action for fraud commenced under Rem. Comp. Stat.,
§ 149, subd. 4, after discovery of the fraud (HOLCOMB, J., dissenting).

Appeal from a judgment of the superior court for
Chelan county, Grimshaw, J., entered March 29, 1924,
upon sustaining a demurrer to the complaint, dismiss-
ing an action to establish a claim against the estate of
a decedent. Affirmed.

*G. W. Hinman,* for appellant.

*Corbin & Easton,* for respondent.

MACKINTOSH, J.—In 1915, when the appellant was
about fourteen years of age, he became entitled to a
sum of money which was paid over to his father as his
guardian. In March, 1920, the father died and the

[1]Reported in 237 Pac. 21.

respondent was appointed administrator of his estate, and on March 31, 1920, published notice to creditors. The time for filing claims would thus expire on September 30, 1920. In March, 1923, the respondent filed his final account, which contained no mention of the guardianship. The appellant then being a few days over twenty-one years of age, filed a petition for an accounting in the guardianship, which being had, showed that the sum of $2,000 was due the appellant from his guardian. On the hearing on the accounting it was discovered for the first time by the appellant that his guardian had misappropriated the fund. On October 6, 1923, he filed a claim in the probate estate for the amount found due him on the accounting. This claim being refused, the present suit was brought, to which a demurrer was interposed and sustained on the ground that the action had not been commenced within the time limited by law.

Laws of 1917, ch. 156, p. 672, § 107 (§ 1477, Rem. Comp. Stat.) [P. C. § 9828], provides that "If a claim be not filed within the time aforesaid [six months after the date of the first publication of notice to creditors] it shall be barred." This statute has been strictly construed and held that it applies to claims of every kind and nature, both those established and those contingent, and under both intervention and non-intervention wills, and that a compliance with the statute is necessary in order for there to be a recovery, and that such compliance cannot be waived by an administrator or executor. *Barto v. Stewart,* 21 Wash. 605, 59 Pac. 480; *Griffin v. Warburton,* 23 Wash. 231, 62 Pac. 765; *Crowe & Co. v. Adkinson Construction Co.,* 67 Wash. 420, 121 Pac. 841, Ann. Cas. 1913D 273; *Ward v. Magaha,* 71 Wash. 679, 129 Pac. 395; *Butterworth v. Bredemeyer,* 89 Wash. 677, 155 Pac. 152; *Harvey v. Pocock,* 92 Wash. 625, 159 Pac. 771; *Empson v. Fortune,* 102

Wash. 16, 172 Pac. 873; *First Security & Loan Co. v. Englehart,* 107 Wash. 86, 181 Pac. 13; *Baumgartner v. Moffatt,* 113 Wash. 493, 194 Pac. 392; *Andrews v. Kelleher,* 124 Wash. 517, 214 Pac. 1056.

In *First Security & Loan Co. v. Englehart, supra,* the court laid down the rule firmly that the failure of creditors to file their claims within the statutory time barred the claims, and distinguished the earlier cases from this court and those from other jurisdictions on the ground that there was a difference in the statutes covering the decisions. Sections 1548 and 1549, Rem. Comp. Stat. [P. C. §§ 9810, 9811], refer to unmatured, contingent and disputed claims, which in *Barto v. Stewart, supra,* and again in *Andrews v. Kelleher, supra,* were held to be subject to the operation of § 1477, *supra.* It is to be noted that the appellant here is not seeking to recover property in specie nor to trace the misappropriated funds into specific property. In other words, he is not following a trust fund, but is seeking to recover a claim which he has against his guardian by reason of the fact that the fund has been mingled with the guardian's own property, which places him in the position of a general creditor, and, under such circumstances, the general rule is stated in Ross on Probate Law and Procedure, Vol. 1, page 532, to be that, where one seeks to recover from an executor or administrator property held in trust by a decedent at the time of his death, he is not required to present his claim as a creditor, for the reason that he is not seeking payment of his demand from the assets of the estate, but if the trust property or fund has been mingled by the trustee with his own property so that it can no longer be identified, the beneficiary must present his claim against the estate as other claims. In Woerner's American Law of Administration, Vol. 2, § 402, it is said:

"As between a *cestui que trust* and his trustee the Statute of Limitations does not usually apply; and where a trustee dies, the trust fund if traceable in specie, constitutes no part of his estate, and is recoverable from the administrator by the successor in the trust, or person entitled to the fund, without any of the formalities prescribed for the establishment of a claim against the deceased, and hence the statute of non-claim does not apply to such an action, . . . But when such trust fund is confused with the trustee's own property, so that its identity is lost, the *cestui que trust*, or new trustee, as the case may be, stands in the position of a general creditor, to whom the statute of non-claim applies with equal rigor as against other creditors."

In 24 C. J. 291, we find the following:

"Upon a trustee's death his indebtedness to the trust becomes a demand against his estate to be authenticated, allowed, classed, and paid out of the assets as other demands, and where decedent made improper investments, commingled trust funds with his own so that they cannot be identified, or wasted or embezzled the trust funds in his hands, the claims of the beneficiaries, whether for a partial or total satisfaction become those of ordinary creditors against decedent's estate."

In 18 Cyc. 467, the rule is stated as follows:

"The statutory requirement of presentation does not apply to the claims of a *cestui que trust* for whom the decedent was trustee so long as the trust fund or property can be traced and the trust enforced by suitable proceedings; but where the fund or property cannot be traced and the *cestui que trust* seeks redress as a general creditor of the estate of the deceased fiduciary he must present his claim. . . . The limitation of time within which claims must be presented for allowance in the probate court is inseparable from the peculiar procedure prescribed in each jurisdiction; it is a part of that procedure and so not like a general statute of limitations, . . . But where the statute

of non-claim makes no exception as to any person or
claims of persons, the courts can make none; and hence
in the absence of some provision to the contrary, the
statutes of non-claim run against non-resident as well
as resident, and infant as well as adult claimants, and
also against insane persons, and the estate of a de-
ceased creditor.''

Our statute of non-claim seems to be in all essentials
the same as those existing in Arkansas and California.
We find the supreme court of the United States, in
*Morgan v. Hamlet,* 113 U. S. 449, 28 Law Ed. 1043,
passing upon the Arkansas statute. In that case the
claimant tried to excuse his failure to file a claim
within the statutory period on the ground that he was
at that time an infant without a guardian and had no
one to represent him until he became of age, at which
time he filed his claim. The court said:

''But we are unable to appreciate the force of this
supposed distinction. The statute in question contains
no exception in favor of claimants under disability, of
nonage or otherwise; the claim of the complainants
against John G. Morgan was adverse to his adminis-
trator, although it may have been originated in con-
sequence of a relation of trust and there is no ground,
that we are able to understand on which it can be ex-
cepted out of the operation of the statute in question.
. . . the statute is a bar to every such claim, unless
presented within the time prescribed.''

The supreme court of California, in *Lathrop v.
Bampton,* 31 Cal. 17, 89 Am. Dec. 141, had before it a
case where a guardian had misappropriated his ward's
funds, mingled them with his own, used them in his
business, and on his death the funds could not be
traced. The plaintiff, who was the ward, brought an
action against the administrator, having presented no
claim. The court said:

''Before a *cestui que trust* can claim specific real or
personal property he must show that it is identical

property originally covered by the trust or that it is the fruit or product thereof in a new form. . . . So long as it can be identified, either as the original property of the *cestui que trust,* or as the product of it, equity will follow it; . . . But the right of pursuing it fails when the means of ascertainment fail. This is always the case when the subject-matter is turned into money, and mixed and confounded in a general mass of property of the same description. . . . When thus forced to rely upon the personal liability of the trustee, a *cestui que trust* occupies a position towards the estate of the trustee which is no better, but is identical with that of a simple contract creditor. . . . Our conclusion is that the plaintiffs, upon the facts as disclosed by the record, had only a claim against the estate of Griffith, upon which they could have recovered had the same been presented to the defendant as required by the act concerning the settlement of the estate of deceased persons, but that they are not entitled to the relief which they obtained in the court below.''

This was followed by similar decisions in California: *McGrath v. Carroll,* 110 Cal. 79, 42 Pac. 466; *Byrne v. Byrne,* 113 Cal. 294, 45 Pac. 536; *Orcutt v. Gould,* 117 Cal. 315, 49 Pac. 188; *Elizalde v. Graves,* 66 Pac. (Cal.) 369; *In re Dutard's Estate,* 147 Cal. 253, 81 Pac. 519, in the last case the court saying:

''The beneficiaries who cannot trace their property are relegated to the position of general creditors of the estate. They must present their claims as such, showing a personal liability, and unless they do this, cannot maintain an action based upon personal liability.''

See, also, *Title Insurance & Trust Co. v. Ingersoll,* 158 Cal. 474, 111 Pac. 360. The same rule has been followed in other jurisdictions. *Lowe v. Jones,* 192 Mass. 94, 78 N. E. 402, 116 Am. St. 225, 6 L. R. A. (N. S.) 487. The Massachusetts court again, in *Little v. Chadwick,* 151 Mass. 109, 23 N. E. 1005, 7 L. R. A.

570, recognizes the situation that, although there is a diversity of opinion among the courts, the great weight of authority is in favor of the rule which it announces. *Attorney General v. Brigham,* 142 Mass. 248, 7 N. E. 851.

The appellant contends, however, that this is an action purely in fraud and that subd. 4, § 159, Rem. Comp. Stat. [P. C. § 8166], entirely covers the situation. The cases of *Wickham v. Sprague,* 18 Wash. 466, 51 Pac. 1055, and *Stearns v. Hochbrunn,* 24 Wash. 206, 64 Pac. 165, establish that the obligation owing by the appellant's guardian to him was one arising from the violation of a duty imposed by the fiduciary relationship between them and that the foundation of appellant's right is the fraudulent conduct of the guardian. The cases of *Cornell v. Edsen,* 78 Wash. 662, 139 Pac. 602, 51 L. R. A. (N. S.) 279, and *Harvey v. Pocock, supra,* are distinguishable on the ground that they were actions not founded upon fraud, because there had been no breach of faith, and that in those two cases the statute of limitations relating to actions for fraud was held not to apply. In none of those cases was the non-claim statute in question. The status of the non-claim statute in relation to other statutes of limitation has never directly been before this court. In *In re Macdonald's Estate,* 29 Wash. 422, 69 Pac. 1111, the court had under consideration a non-intervention will where it was held that, under the law existing then, no claim of any kind was necessary, and the case is therefore of no importance now. In *In re Anderson,* 97 Wash. 688, 167 Pac. 70, there was involved a controversy between the ward and his guardian, who was still living, and of course the non-claim statute had nothing to do with that action. It was there held that the ward could maintain his action after becoming of age and discovering the fraud. In *Harvey*

*v. Pocock, supra,* after saying that the statute of non-claim was without any exception, the court said "this is not a cause of action upon the ground of fraud, in which there might possibly be other controlling considerations." This latter statement was purely dicta. *Newberry v. Wilkinson,* 199 Fed. 673, was an action arising in this state where the circuit court of appeals of the ninth circuit affirmed the judgment of the district court for the eastern district of Washington, reported in *Newberry v. Wilkinson,* 190 Fed. 62, a decision rendered by Judge Rudkin, in which it was held that equity would not remove the bar of the statute of limitations. The circuit court, although affirming the district court on other grounds, takes a contrary view of this question and holds that Federal courts had the right and would, under certain circumstances, "estop the operation of the statute of non-claim." This case cannot be authority, however, in the state courts, the Federal court recognizing that the state court is bound by its statutes, but for itself it feels at liberty to apply its own equitable principles to the question. Moreover, the language used in the circuit court's opinion was not necessary to the decision of the case.

Many courts have said that the non-claim statute is one to be more strictly enforced than general statutes of limitation, its object being to obtain early and final settlement of estates so that those entitled may receive the property free from incumbrances and charges which might lead to long litigation. That this was the purpose of the legislature of this state in passing the statute is especially apparent. An examination of the provision discloses that each step taken has been in the direction of making the compliance with the statute more and more mandatory, and the foreclosing of the assertion of claims after the statutory period more and

more absolute.   In keeping with the legislative spirit, this court has made no exceptions to the statute, and to now do so on the theory of equitable estoppel would be to drive an entering wedge which will tend to confusion and delay.   If fraud will prevent the bar of the statute being raised, there  is no reason why infancy, non-residence, insanity and other disabilities may not have the same effect,. and estates can never be closed and definitely distributed, for, years after the distribution, one who has been guilty of no laches may appear with a claim based on fraud, etc., and establish his rights.   Hardship is bound to result in some instances whichever rule is followed, but in the long run it would seem that a strict compliance with the statute with no estoppel against its use as a bar is the more safe and sensible rule.   It is the rule which this court has applied to somewhat analogous provisions relating to the filing of claims against municipalities.

In the final analysis, we must hold that § 1477 is a statute applying to the settlement of estates and supersedes all other statutes of limitation, and applies to every kind and character of claim against an executor and administrator, and the trial court was therefore correct in sustaining the demurrer.

The judgment is affirmed.

TOLMAN, C. J., BRIDGES, FULLERTON, PARKER, MAIN, MITCHELL, and ASKREN, JJ., concur.

HOLCOMB, J. (dissenting)—While there are strong reasons, as expressed in the majority opinion, for holding that the statute of non-claim sets up an absolute bar to the interposition of any claim after the expiration of the six-months' period prescribed therein, nevertheless equity has always assumed jurisdiction to relieve from the baneful effects of positive statutes in cases of undoubted fraud whereby such a statute is

used as a shield for fraud. It is always understood that equity relieves from the consequences of "that wherein the law by reason of its universality is deficient," and also relieves from that harshness produced by any condition whereby one is undoubtedly guilty of fraudulent conduct and another is undoubtedly innocent and under some disability. To my mind there could be no stronger case produced than that shown by the record in this case. When appellant's guardian died, appellant was not only ignorant of the fraud of his guardian—who was also his father—but was a minor. His minority lasted long after the expiration of the period of six months prescribed by the statute of non-claim. As soon as he was twenty-one years of age he moved with great promptness for an accounting from the estate of his deceased guardian, which was about three years after the death of his guardian, and it was only then that it was discovered that his guardian had been unfaithful to his trust and had defrauded appellant of his property. Surely such a state of affairs is ground for the interposition of equity even as against so positive and absolute a statute as our statute of non-claim.

I like the reasoning of the supreme court of New Hampshire in *Sugar River Bank v. Fairbank,* 49 N. H. 131, which decison held that the non-claim statute is subject to the principles of equity, just as any other statute of limitation, and that fraud of an administrator or his decedent in concealing the cause of action until the statute of non-claim has run affords ground for the exercise of the power of a court of equity to apply the principle of equitable estoppel. The court said:

"To permit a debtor thus to take advantage of his own wrong, would be so repugnant to every principle of natural justice, that it may well be presumed that

it was not contemplated by the law-makers in framing this statute. To allow it would be converting the statute into an instrument of fraud and injustice, and it would require strong language to justify such a construction. The terms of the statute, limiting suits against executors and administrators, are no more explicit or absolute than those of the general statutes of limitations; . . . Nor do we perceive any such difference, in the character of the two subjects, as to afford reason to regard the limitation of suits against executors and administrators to be absolute, and not subject to the established principles of equity, which precludes a party from taking advantage of his own wrong. Both are statutes of repose; and if the purpose had been to make the prohibition of suits against executors and administrators absolute, even in cases of fraud, it would be natural to expect a distinct expression of that purpose, . . ."

See, also, *Newberry v. Wilkinson,* 199 Fed. 673 (C. C. A., 9th Circuit); *Baart v. Martin,* 99 Minn. 197, 108 N. W. 945, 116 Am. St. 394; *Gibbs v. Guild,* 9 L. R. Q. B. 59; *Kreielsheimer v. Gill,* 85 Wash. 175, 147 Pac. 871; *Denny-Renton Clay & Coal Co. v. Sartori,* 87 Wash. 545, 151 Pac. 1088; *Marshall-Wells Hardware Co. v. Title Guaranty & Surety Co.,* 89 Wash. 404, 154 Pac. 801.

If the courts are powerless to enforce the ordinary principles of equity in a case of the most egregious concealed fraud, it is high time that the legislature act to provide a way whereby such fraud may not be perpetuated.

I therefore dissent.