[No. 9116-6-I.   Division One.   August 16, 1982.]

C. JAMES JUDSON, *Respondent,* v. ASSOCIATED MEATS
& SEAFOODS, ET AL, *Defendants,* ESTATE OF
GERALD L. GRIFFIN, ET AL, *Appellants.*

*Schweinler & Lowenberg* and *Garry Fujita,* for appellants.

*C. James Judson,* pro se.

CALLOW, J.—Must the sale of a restaurant by an executrix under a nonintervention will comply with the Bulk Transfers Act, which exempts "[s]ales by executors, administrators, receivers, trustees in bankruptcy, or any public officer under judicial process", RCW 62A.6–103(4)? We hold that the sale need not comply with the Bulk Transfers Act and reverse the trial court's judgment.

Gerald L. Griffin, owner of the Ebbtide Restaurant in Kent, died on October 3, 1979. His will was admitted to probate on October 5. Under the will, the executrix was given nonintervention powers[1] to administer the estate,

---

[1]RCW 11.68, "Settlement of Estates Without Administration", allows estates to be settled with a minimum of court supervision. A personal representative is *presumed* to have nonintervention powers unless the decedent's will provides otherwise.

Unless court supervision of an estate shall be specifically required under the terms and provisions of a will, a decedent shall be deemed to have intended any and all personal representatives named in his will to have the power to administer his estate without the intervention of court, and any personal representative or personal representatives named in the decedent's will shall acquire nonintervention powers without prior notice, upon meeting the requirements of RCW 11.68.010 as now or hereafter amended.

RCW 11.68.020. Subject to certain notice requirements, RCW 11.68.040, and the entry of an order of solvency, RCW 11.68.010, the personal representative has "the power to administer the estate without further intervention of [the] court", RCW 11.68.030. The personal representative also may be required to post bond. RCW 11.68.030.

RCW 11.68.090 sets forth the powers of a personal representative under a

including the power to sell any assets if necessary for administration. *See* RCW 11.68.090. An executrix with nonintervention powers may act with a minimum of court supervision. See footnote 1, *supra*. A notice to creditors was first published in the newspaper on October 8, and a copy filed in superior court on October 10. The notice was given pursuant to RCW 11.40.010, the 4–month probate nonclaim statute.

Sylvester Brown purchased the restaurant from Griffin's estate on January 15, 1980. The lawyers for the buyer and the seller could not agree whether the sale was subject to the Bulk Transfers Act, RCW 62A.6. A notice of the sale and list of creditors, dated January 4, 1980, and prepared in accordance with the act, was mailed to the restaurant's creditors. On March 7, 1980, the buyer's lawyer, as escrow agent, filed an interpleader action to determine how the sale proceeds should be distributed.

The trial court held that the Bulk Transfers Act *did* apply to the sale and that the sale proceeds should be distributed accordingly. Griffin's estate has appealed, contending that the sale was exempt from the act under RCW 62A.6–103(4). The estate has settled the debts with the restaurant's creditors, and none of the creditors are participating in this appeal.

How would distribution of the sale proceeds differ if the money were distributed in accordance with the probate

---

nonintervention will.

> Any personal representative acting under nonintervention powers, may mortgage, encumber, lease, sell, exchange, and convey the real and personal property of the decedent, and borrow money on the general credit of the estate, without an order of court for that purpose and without notice, approval or confirmation, and in all other respects administer and settle the estate of the decedent without intervention of court. Any other party to any such transaction and his successors in interest shall be entitled to have it conclusively presumed that such transaction is necessary for the administration of the decedent's estate.

When the estate is ready to be closed, the personal representative may either apply to the court for a final decree under RCW 11.68.100 or file a declaration of completion under RCW 11.68.110; the declaration is the equivalent of a decree of distribution under RCW 11.76, "Settlement of Estates".

statutes instead of in accordance with the Bulk Transfers Act? Under the probate nonclaim statute, RCW 11.40.010, a creditor with a claim against the deceased that arose *before* death must file the claim with the personal representative within 4 months after the notice to creditors is first published[2] or filed with the court, whichever is later. If the creditor's claim is *not* filed within 4 months, it is forever barred. *Davis v. Shepard,* 135 Wash. 124, 237 P. 21, 41 A.L.R. 163 (1925). A claim that arose *after* death is treated differently; it is a claim against the *estate,* not the deceased. Claims against the estate are *not* subject to the 4–month probate nonclaim statute and need not be filed in order to be allowed. *See Foley v. Smith,* 14 Wn. App. 285, 294–95, 539 P.2d 874 (1975); *In re Estate of Wilson,* 8 Wn. App. 519, 525–26, 507 P.2d 902 (1973). Predeath debts that are properly filed and postdeath debts are ranked seventh in the payment order of debts under RCW 11.76.110. *But see In re Estate of Offield,* 7 Wn. App. 897, 902 n.2, 503 P.2d 767 (1972).

Unlike the probate statutes, which treat debts arising before death differently from debts arising after death, the Bulk Transfers Act operates simply. If the sale of a business qualifies as a bulk transfer, RCW 62A.6–102(1), (2), and is not otherwise exempt, RCW 62A.6–103, the seller must prepare a list of his existing creditors for the buyer, RCW 62A.6–104. RCW 62A.6–105 requires the buyer to give notice of the sale to *each* creditor. If the buyer furnishes new consideration, he must "assure that such consideration is applied so far as necessary to pay those debts of the [seller] which are either shown on the list furnished by the [seller] . . . or filed in writing in the place stated in the notice [to creditors] . . ." RCW 62A.6–106(1). If the debts cannot be paid in full, each creditor receives a pro rata share. RCW 62A.6–106(3).

---

[2]A creditor has 18 months to file if the claim is covered by liability or casualty insurance. RCW 11.40.011; *see Turner v. Estate of Lo Shee Pang,* 29 Wn. App. 961, 631 P.2d 1010 (1981).

In the case before us, creditors of the Ebbtide Restaurant apparently filed their claims as directed in the notice to creditors under the Bulk Transfers Act. They did *not* file claims arising before Griffin's death with his executrix as required by the probate nonclaim statute. By ordering the sale proceeds distributed in accordance with the Bulk Transfers Act, the trial court granted the restaurant's creditors a *higher priority* than they would have had otherwise. Under the Bulk Transfers Act, business creditors have first claim to the proceeds; under the probate statute they are seventh in line. The trial court's order also allows the restaurant's creditors to be paid *regardless of when their claims arose*. Under the probate statutes, debts arising before death are paid only if they are filed within the nonclaim period; debts arising after death, or claims against the estate, need not be filed.

■ The trial court's holding conflicts with the long-standing policy that "the non–claim statute is one to be more strictly enforced than general statutes of limitation". *Davis*, at 131. The statute is mandatory, not subject to enlargement by interpretation, and cannot be waived. *Ruth v. Dight,* 75 Wn.2d 660, 669, 453 P.2d 631 (1969); *New York Merchandise Co. v. Stout,* 43 Wn.2d 825, 827, 264 P.2d 863 (1953). Compliance with its requirements is essential for recovery. *Messer v. Estate of Shannon,* 65 Wn.2d 414, 415, 397 P.2d 846 (1964). Thus, even if we were to hold that the Bulk Transfers Act applies to the sale of the restaurant, the restaurant creditors would have first claim to the sale proceeds only for those claims arising *after* Griffin's death. Claims arising before his death would be allowed only if filed within the nonclaim period, and RCW 11.76.110 would place them seventh in the order of debts to be paid. "Equitable considerations may not mitigate the strict requirements of the [nonclaim] statute where a timely claim has not been filed by the creditor . . ." *In re Estate of Wilson,* at 525.

While the difficulties that would be encountered by applying both the probate statutes and the Bulk Transfers

Act might be reason enough to restrict the application of the act, we believe the act specifically exempts sales by executors from its requirements. In *Cintron v. Amsted Indus., Inc.*, 395 F. Supp. 1147 (E.D. Pa. 1975), one Moyer was alleged to have sold a defective punch press to plaintiff's employer. Moyer died and the plaintiff asserted that those who had acquired the decedent Moyer's sole proprietorship had assumed his liabilities. The plaintiff argued that the Bulk Sales Act required the assumption of liabilities by those who had acquired Moyer's assets. The court observed, after commenting on the provisions of the Pennsylvania Bulk Sales Act, that

> it is doubtful that the Bulk Sales Act applies to the sale of assets from an estate, given the fact that the estate's creditors have already been given notice and have had the opportunity to present their claims through the probate process.

*Cintron,* at 1150. Here, all predeath creditors of the estate are on notice of the need to file claims in the estate pursuant to RCW 11.40.010 while those postdeath creditors dealing with the estate through an executor or administrator are bound to know the capacity in which such a fiduciary acts and protect themselves accordingly.

The transfers exempted from the act are listed in RCW 62A.6–103. At issue is the meaning of subsection (4).

> The following transfers are not subject to this Article:
>
> . . .
>
> (4) Sales by executors, administrators, receivers, trustees in bankruptcy, or any public officer under judicial process; . . .

The restaurant's creditors, arguing below for the application of the act, contended that "under judicial process" modifies "sales by executors." Accordingly, an executor's sale under a nonintervention will did not fall within the act's exemption because the executor was not "under judicial process." See footnote 1, *supra.*

■ The problem before the court is one of statutory interpretation.

The fundamental object of judicial construction or statutory interpretation is to ascertain, if possible, and to give effect to, the intention of the legislature in enacting a particular statute . . .; and in doing so, our first resort is to the context and subject matter of the legislation ". . . because the intention of the lawmaker is to be deduced, if possible, from what it said." *Lynch v. Department of Labor & Industries,* 19 Wn. (2d) 802, 806, 145 P. (2d) 265 (1944).

(Citation omitted.) *In re Estate of Kurtzman,* 65 Wn.2d 260, 263, 396 P.2d 786 (1964); *accord, In re Renton,* 79 Wn.2d 374, 376, 485 P.2d 613 (1971).

██ Under a traditional rule of statutory construction, the qualifying phrase "under judicial process" modifies only "public officer"; the phrase does *not* refer to "executors."

Where no contrary intention appears in a statute, relative and qualifying words and phrases, both grammatically and legally, refer to the last antecedent. . . .

The last antecedent is the last word which can be made an antecedent without impairing the meaning of the sentence.

(Citations omitted.) *Davis v. Gibbs,* 39 Wn.2d 481, 483, 236 P.2d 545 (1951); *accord, In re Renton,* at 376–77; *Martin v. Aleinikoff,* 63 Wn.2d 842, 846, 389 P.2d 422 (1964); *In re Estate of Kurtzman,* at 264; *In re Andy,* 49 Wn.2d 449, 451, 302 P.2d 963 (1956); 2A C. Sands, *Statutory Construction* § 47.33 (4th ed. 1973).

"Public officer" is the last antecedent that "under judicial process" can refer to without impairing the meaning of the sentence. "Under judicial process," therefore, does not modify "executors" or any of the other nouns preceding "public officer." No contrary intention appears in the statute. A plain reading of the statute also supports this conclusion. *See In re Renton,* at 376.

RCW 62A.6–103(4) changed the statute it replaced, RCW 63.08.010 (repealed 1965). The former law exempted from the Bulk Transfers Act "sales or transfers of property by executors, administrators, receivers, or public officers, acting under judicial process." Laws of 1939, ch. 122, § 4, p.

343. In the former statute, "acting under judicial process" *did* modify all the preceding nouns because the phrase was introduced with a comma.

> Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma.

(Footnote omitted.) 2A N. Singer, *Statutory Construction* § 47.33 (4th ed. Supp. 1981).

In conclusion, the estate is correct in its contention that the sale of the Ebbtide Restaurant was *not* governed by the Bulk Transfers Act. The sale proceeds should be distributed in accordance with the will and the probate statutes, and not in accordance with the Bulk Transfers Act. The judgment is reversed.

SWANSON, J., concurs.

RINGOLD, J. (dissenting)—I respectfully dissent and would affirm the trial court's decision requiring compliance with the Bulk Transfers Act (BTA) as incorporated into the Uniform Commercial Code (U.C.C.) in 1965. The majority opinion serves no justifiable policy and turns on an overly technical and erroneous analysis of the BTA. RCW 62A.6–103 states:

> The following transfers are not subject to this Article:
>
> . . .
>
> (4) Sales by executors, administrators, receivers, trustees in bankruptcy, or any public officer under judicial process . . .

The majority places inordinate emphasis on the lack of a comma following the word "officer." Before adoption of the U.C.C., the Legislature enacted versions of the BTA without apparent regard for the placement of the comma:

1901: "Nothing in this act contained shall apply to executors, administrators, receivers, or any public officer acting under judicial process." Laws of 1901, ch. 109, § 5, p. 224.

1925: "[N]othing contained in this act shall apply to sales or transfers of property by executors, administrators,

receivers, or public officers acting under judicial process." Laws of 1925, 1st Ex. Sess., ch. 135, § 1, p. 338.

1939: "[N]othing contained in this act shall apply to sales or transfers of property by executors, administrators, receivers, or public officers, acting under judicial process." Laws of 1939, ch. 122, § 4, p. 343.

The Washington Comments to the U.C.C., RCWA 62A.6–103(4), support the view that no substantive change was intended from the prior law, which included the comma: "[Subsection 4 is] in substantial conformity with the prior Washington rule. RCW 63.08.010 [Laws of 1939, *supra*] expressly excluded transfers by 'executors, administrators, receivers, or public officers, acting under judicial process.'"

The critical difference between the U.C.C. and the prior statutes is the omission of the word "acting," which in the prior statutes made the phrase "under judicial process" modify the individual actors, the executors, administrators, receivers, and public officers. Without the word "acting," the phrase "under judicial process" must be taken to modify the word "sales." It makes no sense to speak of an executor or a public officer under judicial process. The exemption relates only to those sales made under the supervision of a court because in such sales the court would presumably exercise due regard for the rights of the business creditors.

The probate code and the BTA were not enacted in a vacuum. The sections of the probate code dealing with creditors apply only, except for expenses of administration, to debts incurred by the decedent. The specific purpose of the Bulk Sales Act is to protect the creditors of a business.

The probate code does not, nor was it intended to, provide protection to postdeath business creditors. In the case at bench, the death occurred on October 3, 1979, and a notice to creditors was first published October 8, 1979. The business continued operation after death until the time of sale to Sylvester Brown on January 15, 1980. The creditors of a decedent are put on notice by the requirement of publication of notice to the creditors that may suffice if the

business ceases operation. But when a nonintervention executor continues to operate an existing business, the majority opinion affords no protection to the creditors who have enabled that business to continue in operation. While here the business continued for only 3 months, many instances arise where the business continues in operation under the executor or administrator for a much longer period. The creditors of the business may have no knowledge of the precise legal entity that controls the business operations, and should not be denied the protection of the BTA.

The absence of the word "acting", the insignificance of the missing comma, the policy in favor of protecting creditors' rights following a bulk transfer, all speak in favor of applying the BTA to a sale of the business by an administrator or executor with nonintervention powers. The sale here was not made under the direction or order of the court and thus was not "under judicial process."

I would therefore hold that the sale, by the personal representative with nonintervention powers, requires compliance with the BTA. We should affirm the trial court's holding and order distributing the proceeds of the sale pursuant to the BTA.