# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CATHY WEYAND, | No. 55487-9-II |
| Appellant, | |
| v. | |
| ESTATE OF VERNON C. NEWELL and ANNE M. LAND, personal representative, | UNPUBLISHED OPINION |
| Respondents. | |

GLASGOW, C.J.—Cathy Weyand is a second cousin of Vernon C. Newell. Weyand helped Newell take care of his pets, but they had a falling out, and Newell arranged for the Humane Society of Cowlitz County to take his pets and adopt them out when he passed away. The Humane Society would have provided this service free of charge. But soon after Newell was hospitalized, Weyand put chains and locks on the gate to his property. When he died soon after, she took his pets and incurred expenses caring for them. Weyand also sought to be appointed personal representative of Newell's estate against his wishes.

The trial court instead appointed Newell's first cousin, Anne Land, as personal representative. After caring for the animals for several months, Weyand filed a claim against the estate as a creditor's claim for costs of animal care and other expenses she incurred. Land rejected the claim. Weyand then filed a petition under the Trusts and Estates Dispute Resolution Act (TEDRA), chapter 11.96A RCW, requesting payment on her claim.

After filing the TEDRA petition, Weyand asserted she mistakenly sought relief under TEDRA and asked the trial court to treat the case as an ordinary civil matter instead. The trial court rejected this argument and then denied Weyand's petition on the merits.

On appeal, Weyand argues the trial court erred when it reviewed her rejected creditor's claim using an expedited TEDRA procedure, rather than adhering to the ordinary rules of civil procedure. She also appeals the award of attorney fees to the estate. However, Weyand's claim was for costs of administration of the estate because Newell was already deceased at the time that Weyand took his pets and began incurring costs. Costs of administration are within TEDRA's purview, so the TEDRA procedure was proper. And the trial court did not err when it awarded fees to the estate.

We affirm. We also award the estate attorney fees on appeal.

FACTS

Newell resided on his property in Cowlitz County, and he owned many dogs and cats. He had no living spouse, children, or siblings. His second cousin, Weyand, helped him care for the animals. But before Newell's death, Newell and Weyand had a falling out, and Newell sought a protection order against Weyand because he was afraid that she would "attempt to take his property and keep his pets." Clerk's Papers (CP) at 84. Weyand felt that because she had taken care of the animals in the past, she had an interest in their well-being.

Tina Schneider, a local Cowlitz County animal control officer, worked with Newell for more than two years and became familiar with Newell's pets and his property. She would do welfare checks, consult with Newell about litters of puppies, and help Newell to ensure his dogs remained on his property. Schneider and the Humane Society also successfully worked with

2

Newell to adopt out litters of Newell's puppies and agreed to help Newell get his dogs spayed or neutered since he could not drive.

Due to growing health concerns, Newell told Schneider that when he could no longer care for the animals, "he wanted [her] to pick up his dogs and care for them." CP at 104. Schneider promised to do her best to care for the animals. The Humane Society would provide this service and make sure the animals were adopted free of charge. Schneider's primary concern was helping the animals and fulfilling the promise made to Newell.

In the meantime, Weyand was demanding information from Schneider and her supervisors, but Newell had requested that they not share information about the animals with Weyand.

On October 13, 2019, Schneider received a call from the Cowlitz County sheriff informing her that Newell was being taken to the hospital. Schneider checked on the dogs to be sure they had food and water, and she began to make arrangements to transport them to the Humane Society. While Schneider was away from the property, Weyand put chains and locks on the gate so that Schneider could no longer enter.

Newell passed away on October 17, 2019. Weyand then removed the animals from the property.

Land, Newell's first cousin, was appointed as personal representative of his estate with full court intervention. Weyand unsuccessfully contested the appointment, sought to be appointed as personal representative herself, and swore under oath that she was not a creditor of the estate. Despite Newell's wishes, Land was willing to turn ownership of the animals over to Weyand so long as Weyand would accept responsibility for them. Weyand would not confirm in writing that she was accepting full responsibility for the animals' care.

On June 30, 2020, Weyand timely filed what she labeled a "creditor's claim" against Newell's estate for $12,533.90. She claimed that she had expended more than this amount to care for the animals.[1] Weyand's reported expenses showed that every month she spent hundreds of dollars on pet food and pet bedding. She also claimed $20.00 an hour for her own labor in moving and caring for the pets. Land rejected Weyand's claim, stating that Weyand had no authority to incur the costs she was asking the estate to pay and that she was trying to "bilk the [e]state out of as much as she can." CP at 78.

Weyand filed a timely TEDRA petition, naming both the estate and Land as respondents and demanding payment on her rejected claim. The estate responded, attaching declarations from Land and Schneider explaining that the Humane Society would have transported the animals, cared for them, and adopted them out as Newell directed, all for free. The estate also submitted copies of e-mails where Land's attorney attempted to obtain a commitment from Weyand or her attorney that she was taking full responsibility for the animals.

Two days after the estate responded, Weyand's counsel filed a reply alerting the trial court to *In re Estate of Berry*, 189 Wn. App. 368, 358 P.3d 426 (2015), and asserting under that case, that the court should treat Weyand's petition as an ordinary civil matter subject to the rules of civil procedure, including CR 56, which governs summary judgment proceedings. Weyand asserted that where a creditor's claim is rejected, *Berry* requires that the claimant proceed under ordinary civil rules because the claimant is not yet a creditor under TEDRA.

---

[1] The receipts and accounting of labor totaled $20,642.97, more than the amount requested in Weyand's claim. Weyand also submitted receipts for utilities and the cost of an obituary but, on appeal, Weyand limits her arguments to the amount in her creditor's claim and arguments about what she expended for care of the animals. As a result, we do not address these additional expenses.

At a hearing on September 9, 2020, Weyand argued that she was entitled to more time to respond to the estate's arguments for dismissal under the ordinary civil rules, and the trial court set the case over. Weyand then filed supplemental briefing.

Almost a month later, on October 7, 2020, the trial court held the continued hearing. Weyand reiterated her argument that this case should be handled under the ordinary civil rules. The estate argued that given the undisputed facts, Weyand's petition involved a claim for costs of administration of the estate because Weyand's claimed expenditures occurred after Newell's death, and TEDRA contemplated such claims would be resolved under that statute. The estate argued the trial court should resolve the case on the merits based on the undisputed facts.

The trial court entered an order denying Weyand's claim on the merits. The trial court reasoned that the Humane Society had a plan in place to take care of the animals and that Weyand appeared to "have stepped in and inserted herself." Verbatim Report of Proceedings (Oct. 7, 2020) at 29. The trial court pointed out that Weyand offered no evidence of "authorization or authority for incurring any costs associated with the care of the animals." CP at 142.

In its order denying Weyand's claim, the trial court cited to both TEDRA and chapter 11.40 RCW, the nonclaims statute, and concluded that Weyand's claim was not a valid creditor's claim against the estate, nor was it a valid cost of estate administration. The trial court also awarded attorney fees to the estate. Weyand appeals.

## ANALYSIS

### I. APPLICABLE PROCEDURE

Weyand argues that the trial court erred in using the TEDRA procedure to enter judgment against her. Relying on *Berry*, she contends that because her creditor's claim was rejected, the trial court should have treated her lawsuit as an ordinary civil case because she could not be a "proper party" and her claim could not be a "matter" under TEDRA until the estate accepted her claim, thereby making her a creditor. Appellant's Br. at 5-8.

The estate counters that this case differs from *Berry* because Weyand's claim is one for reimbursement for the costs of estate administration rather than a creditor's claim for a debt Newell incurred before his death. Thus, Weyand's petition was properly before the court as a TEDRA petition because it addressed a claim for reimbursement of administration expenses under RCW 11.96A.030(2)(c).[2] We agree with the estate.

TEDRA gives the courts "full and ample power and authority under [Title 11 RCW] to administer and settle" all matters involving estates. RCW 11.96A.020(1). It is well established that claims arising after the death of the decedent are not considered creditor's claims. *See Olsen v. Roberts*, 42 Wn.2d 862, 865, 259 P.2d 418 (1953) (explaining that to qualify as a claim against the estate, an obligation must arise as a debt incurred during the decedent's lifetime); *Witt v. Young*, 168 Wn. App. 211, 218, 275 P.3d 1218 (2012) (same). Instead, claims that arose *after* the death of the decedent are "treated differently." *Judson v. Associated Meats & Seafoods*, 32 Wn. App. 794, 797, 651 P.2d 222 (1982). Claims that accrue after the decedent's death are claims for costs of

---

[2] RCW 11.96A.030(2) was amended in 2021. Because the amendment does not affect this case, we cite to the current version of the statute.

administration. *In re Est. of Wilson*, 8 Wn. App. 519, 525, 507 P.2d 902 (1973). Costs of administration of the estate are properly resolved under TEDRA because the definition of "matter" under TEDRA includes "[t]he determination of *any question* arising in the administration of an estate." RCW 11.96A.030(2)(c) (emphasis added). This holding aligns with the legislature's goal for TEDRA to create efficient and centralized procedures for adjudication of estates. FINAL B. REP. ON S.B. 5196, 56th Leg., Reg. Sess. (Wash. 1999).

Weyand relies on *Berry*, where Division One held that if a *creditor's claim* is rejected by the personal representative of the estate, the claim should be brought as an ordinary civil action under RCW 11.40.100. 189 Wn. App. at 375. But Newell did not make an agreement with Weyand before his death that she would care for his pets. In fact, Newell specifically arranged a care plan with the Humane Society for no cost. Weyand only took Newell's pets and incurred the costs she lists in her claim after Newell's death. Therefore, any claims that Weyand made for the costs of this care are best categorized as costs of administration of the estate, which are properly addressed under TEDRA. RCW 11.96A.030(2)(c).

Weyand asserts for the first time in her reply that she received no notice of Newell's plan to dispose of the animals. Because she raised this argument for the first time in her reply brief, we need not address it. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) ("An issue raised and argued for the first time in a reply brief is too late to warrant consideration."). Even so, regardless of whether Weyand received any notice about Newell's plans for the animals, she still has provided no evidence that she was ever given authority to care for the animals *at the estate's expense*. She does not dispute that neither Newell nor the estate gave her authority to incur animal care costs at the expense of the estate, so this lack of notice is immaterial.

7

We conclude the trial court properly addressed Weyand's claim under TEDRA.

## II.  ATTORNEY FEES BELOW AND ON APPEAL

Weyand argues the trial court's award of attorney fees to the estate should be reversed. TEDRA gives the superior court discretion to award attorney fees and costs to any party "in such amount and in such manner as the court determines to be equitable." RCW 11.96A.150(1). We will alter a fee award under RCW 11.96A.150(1) only if we find an abuse of discretion. *In re Est. of Boatman*, 17 Wn. App. 2d 418, 426, 488 P.3d 845, *review denied*, 198 Wn.2d 1020 (2021).

Because we affirm the trial court's order dismissing Weyand's petition, and because Weyand does not identify any error amounting to abuse of discretion with regard to the fee award, we do not disturb the award of attorney fees to the estate.

The estate also seeks attorney fees on appeal. RCW 11.96A.150 allows this court on appeal to order costs, including attorney fees, to any party. We may consider "any and all factors" that we deem to be "relevant and appropriate." RCW 11.96A.150(1). The estate has prevailed on appeal, and we conclude it is equitable to award the estate reasonable costs and attorney fees on appeal in an amount to be determined by a commissioner of this court.

No. 55487-9-II

## CONCLUSION

We affirm. We grant the estate's request for attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Glasgow, CJ

We concur:

_____
Worswick, J.

_____
Price, J.

9