[No. 28827. Department Two. November 14, 1942.]

THE STATE OF WASHINGTON, on the Relation of Ethel R. Nelson, Plaintiff, v. THE SUPERIOR COURT FOR KING COUNTY, John A. Frater, Judge, Respondent.[1]

[1]Reported in 131 P. (2d) 144.

*Ray M. Wardall* and *Fred C. Campbell,* for relator.

*Rummens & Griffin,* for respondent.

BEALS, J.—On the petition of Ethel R. Nelson, an alternative writ of certiorari was issued, requiring the respondent herein to show cause why a writ of certiorari should not issue, bringing before this court for review an order entered in the matter of the guardianship of Ethel R. Nelson, an alleged incompetent person, pending before the superior court for King county, authorizing three doctors to examine Mrs. Nelson to the end that they might, from such examination, testify at the hearing to be held in the guardianship proceeding concerning Mrs. Nelson's mental and physical condition. In response to the alternative writ, respondent made a complete return, and upon the argument the matter was submitted for final determination.

From the return, it appears that Orin H. Redfield, a brother of Mrs. Nelson, applied to the superior court for King county for the appointment of Pacific National Bank of Seattle, a corporation, as guardian of the person and estate of his sister. The petition alleged that, due to Mrs. Nelson's physical and mental condition, she is utterly incompetent to care for herself or her estate, and that grave danger exists that her property of the approximate value of twenty-five thousand dollars will be dissipated and wasted.

Mrs. Nelson, relator herein, filed her answer to the petition, denying that any necessity existed for the appointment of a guardian for either her person or her estate, and, by way of an affirmative defense, alleged that heretofore J. Frank Redfield, another brother, applied to the superior court for Skagit county for his own appointment as guardian of her estate; that, pursuant to his application, J. Frank Redfield was appointed as guardian of her estate, and that thereafter relator petitioned that he be removed; that a hearing upon her petition was had, and an order entered denying the same; that Mrs. Nelson appealed from the order to this court, with the result that the order was reversed, with instructions that her petition be granted (*In re Nelson*, 12 Wn. (2d) 382, 121 P. (2d) 968); that thereafter, the proceeding having been remitted to the superior court for Skagit county, that court entered an order declaring relator competent to manage her own estate, and directing that J. Frank Redfield file his account, and that, upon the settlement of the same, he turn over to Mrs. Nelson all property in his hands belonging to her.

It is further alleged in Mrs. Nelson's answer that J. Frank Redfield had not complied with the order referred to, and still retained relator's property in his possession. Relator further alleged that she was entirely competent to control her person and estate, and that no occasion for the appointment of a guardian existed.

Two affidavits were filed on behalf of relator, one by Fred C. Campbell, her attorney, and the other by Arlie R. Mowry, her sister, both affiants stating that Mrs. Nelson's mental condition is approximately the same as it was at the time of the hearing before the superior court for Skagit county.

Thereafter, Orin H. Redfield filed in the proceeding his verified petition, praying for an order permitting

three qualified psychiatrists, whom he named, to examine Mrs. Nelson prior to the hearing upon his petition for the appointment of a guardian for her, for the purpose of making such examination a basis for the testimony which the three physicians would be expected to give at the hearing. It is stated in this petition that Mr. Redfield had already requested the court to appoint a commission of psychiatrists, chosen by the court, to examine Mrs. Nelson, and that his application had been denied.

Relator filed objections to the entry of this order, alleging that the superior court for King county had acquired no jurisdiction over the subject matter of the proceeding, or over Mrs. Nelson personally, and further objecting to the jurisdiction of the court to enter any order requiring Mrs. Nelson before the hearing to submit to an examination as to her competency by psychiatrists or physicians employed by Orin H. Redfield, suggesting particular objection to the three psychiatrists whose appointment Mr. Redfield requested.

After a hearing upon Mr. Redfield's application for the appointment of the physicians to examine Mrs. Nelson, the court entered an order authorizing the three physicians suggested by Mr. Redfield to physically examine Mrs. Nelson, as above stated. This is the order which is now before us for review.

For a statement of some relevant facts, we refer to the opinion of this court *In re Nelson, supra*. In that proceeding, as above stated, Mrs. Nelson was declared to be competent to manage her estate.

No authority has been cited in support of the proposition that in a guardianship proceeding the court may, before a hearing, direct that the alleged incompetent submit to an examination by physicians named by the court to conduct such an examination. It is contended that such power is included in the general in-

herent authority of the court to conduct guardianship proceedings, and to take such steps as may be deemed advisable in order that a full and complete hearing may be had.

In the case of *Lane v. Spokane Falls & Northern R. Co.*, 21 Wash. 119, 57 Pac. 367, 75 Am. St. 821, 46 L. R. A. 153, this court, by a three to two decision, held that the superior court possessed inherent power to require a plaintiff in a tort action for personal injuries to submit to a pre-trial examination by medical experts appointed by the court for the purpose of ascertaining the nature, character, and extent of plaintiff's injuries. The majority held that the plaintiff, having voluntarily instituted the action for the purpose of recovering damages for her alleged injuries, should be required to submit to an examination by doctors for the purpose of obtaining, prior to the trial, expert evidence as to her condition.

By chapter 63, p. 236, Laws of 1915 (Rem. Rev. Stat., § 1230-1 [P. C. § 7765]), the legislature provided that, on or before the trial of an action to recover damages for personal injuries, the court might, on application of any party to the action, order an examination of the person claiming to have been injured, by competent physicians or surgeons, in order to qualify the persons making such examination to testify at the trial concerning the injuries.

It seems reasonable that, when a person voluntarily brings an action for the recovery of damages on account of personal injuries alleged to have been suffered, the court should have the power to direct that, prior to the trial, the plaintiff submit to a physical examination. No statute exists in this state authorizing such action in an adversary proceeding for the appointment of a guardian of an alleged incompetent.

In the case of *Shumway v. Marion*, 155 Wash. 60, 283 Pac. 444, this court observed that, in an action for per-

sonal injuries, "the trial court was entirely justified in denying the request to appoint two physicians" of the defendant's choosing.

The right of a court to direct that a physician make a physical examination of a party to an action was recognized at common law in certain classes of actions, such as proceedings for divorce and in cases where it was desired to make proof of heirship. Such an examination was also permitted in criminal prosecutions for mayhem. 8 Wigmore on Evidence (3d ed.) 184, § 2220 *et seq.*

Pursuant to Rem. Rev. Stat., § 6930 [P. C. § 2827], when it is charged under oath that a person, by reason of insanity, is unsafe to be at large, it is provided that the alleged incompetent be examined before two reputable physicians. This procedure applies only under the circumstances mentioned.

The authority assumed by the trial court in entering the order under review certainly trenches to a great extent upon the liberty of the individual. One in relator's situation is not a voluntary participant in such a proceeding as this. The proceeding is adverse to her. It may be assumed that, in the great majority of cases, no petition alleging incompetency would be filed unless at least some ground existed for such a charge. Assuming, then, that the alleged incompetent is physically or mentally ill, the charge of incompetency itself would naturally have a bad effect upon the person, and tend to aggravate any unfortunate existing condition. If, in addition to the charge, the alleged incompetent must submit to the ordeal of what would necessarily be a lengthy physical and mental examination by three physicians known to have been chosen by the adverse party, the effect would probably be very bad, and might be serious.

The alleged incompetent would very probably feel

that mere self-protection would require that her own physician or physicians be present at the examination. Regardless of whether or not such a feeling would be well founded, the subject of the examination, realizing that the examining physicians were chosen and to be compensated by the opposing party, would feel that the examining physicians were functioning for the purpose of testifying, if possible, that the subject was incompetent. There would be no way of terminating the examination until the examining physicians chose to end the same, and its undue extension might well be most unfair and harmful to the subject. Neither would there be any control of the questions which the examiners might ask, and, even though the subject might be represented and advised by counsel, the mere persistent asking of improper questions might well irritate the person examined and produce unfortunate results. It would seem that counsel for an alleged incompetent might be of the opinion that he could advise his client to submit to such an ordeal only in the presence of physicians of her own choosing, her counsel, and a reporter who would record the entire examination.

A petition for the appointment of a guardian on the ground of mental incompetency may be filed against any person at any time. If the procedure embodied in the order now before us for review may be established, it might be used improperly and for some ulterior purpose entirely disconnected from any question of guardianship. In the absence of any controlling authority, such as the presence of the judge, much harm might result. Certainly no such step should be taken unless the judicial authority to make the order clearly appear, and some very real emergency should be shown to exist. The ordeal of appearing in court, or even knowing that such a proceeding has been filed, is considerable, but those consequences cannot be avoided. In

open court, the alleged incompetent has the benefit of judicial protection. If, in the course of the hearing before the court upon the application for appointment of a guardian, the court feels that the evidence produced is inadequate, or for any reason unsatisfactory, and for its own information desires further testimony, a different situation might arise, concerning which we express no opinion. If the procedure followed in entering the order under review be held good, it would allow the filing of a petition for the appointment of a guardian, and then permit the petitioner to send physicians of his own selection to examine the alleged incompetent by way of an exploring expedition to see what they could discover.

In the case at bar, the order provided that the three physicians named should make only one examination of relator, and that the time should suit relator's convenience, but, even with that restriction, the accomplishment of the order would require that relator undergo a very trying ordeal, which might have, to her, injurious consequences. The order before us for review was entered without warrant of law, and we feel infringed relator's lawful rights to personal peace and security.

Relator has also argued that the trial court lacked jurisdiction to enter the order, for the reason that it is nowhere alleged that Mrs. Nelson's physcial or mental condition had suffered a change for the worse since the superior court for Skagit county had declared her competent, and directed her former guardian to account for her property which had been in his possession. This matter appeared from relator's answer, in which it was also alleged that her prior guardian had not accounted to her or turned over to her her property.

Somewhat similar matters were considered by this court In re Gaddis, 12 Wn. (2d) 114, 120 P. (2d) 849.

The case cited involved the guardianship both of the person and estate of an admitted incompetent. The prior guardianship of relator was of her estate only. In the *Gaddis* case, we held that,

"Even upon the death of the ward, or the restoration of his competency, judicially determined, the guardianship is deemed to continue, and jurisdiction to remain in the administering court until the ward's estate has been fully accounted for or restored and finally distributed."

Whether or not such questions may be considered on review of an order such as that now before us by way of a writ of certiorari, is doubtful. Upon the record before us, relator is not entitled to a judgment of this court directing that Mr. Redfield's petition for the appointment of a guardian for relator's person and estate be at this time dismissed.

For the reasons assigned, the order under review is reversed.

ROBINSON, C. J., SIMPSON, and DRIVER, JJ., concur.

BLAKE, J., concurs in the result.