[No. 29083.   Department Two.   July 19, 1943.]

THE STATE OF WASHINGTON ·on the Relation of The
National Bank of Commerce of Seattle, as Guardian,
Plaintiff, v. JOHN A. FRATER, as Judge of the Su-
perior Court for King County, Respondent.[1]

'Reported in 140 P. (2d) 272.

*Wettrick, Flood & O'Brien,* for relator.

*McClure & McClure,* for respondent.

BEALS, J.—The National Bank of Commerce of Seattle, a corporation, as guardian of the estate of Charles S. Noble, an incompetent, applied to this court for a writ of certiorari directed to the respondent, as judge of the superior court for King county, seeking to bring before this court for review an order entered by the superior court, April 20, 1943, in the matter of the guardianship of Charles S. Noble, an incompetent, the order directing relator as guardian to pay to United States Fidelity & Guaranty Company, a corporation (hereinafter referred to as the bonding company), out of funds in its possession, as guardian, the sum of $3,036.91, with interest from February 13, 1942, in full satisfaction of the bonding company's claim against the estate of the incompetent. The writ having issued, respondent made full return thereto. Briefs were filed before this court, and the matter was argued upon the return day fixed in the writ.

The pertinent facts may be briefly stated as follows: Sometime prior to October 20, 1941, Charles S. Noble was, by the superior court for King county, appointed guardian of his three minor children. He qualified as such guardian, filing his bond, upon which the bonding company was surety. Mr. Noble having become mentally incompetent, October 20, 1941, relator bank was appointed guardian of his estate. Relator qualified as guardian, and ever since has been acting as such. Relator was also appointed guardian of the estate of the minor children, in succession to Mr. Noble. Charles S. Noble died testate, November 15, 1942, and thereafter his will was admitted to probate, and relator bank

appointed executor thereof. Neither of the two guardianships above referred to having been closed, relator is now guardian of the minor children, guardian of the estate of Charles S. Noble, an incompetent, and executor of the last will of Charles S. Noble, deceased.

February 13, 1942, relator, as guardian of the estate of the minor children, recovered judgment against Charles S. Noble, an incompetent, and against the bonding company claiming reimbursement out of the guardian, for the sum of $3,036.91, on account of misappropriation of the children's property by Charles S. Noble, while acting as guardian of his children. This judgment the bonding company paid in full to relator, as successor guardian of the Noble children. February 13, 1942, the bonding company filed with relator as guardian of Charles S. Noble, an incompetent, its creditor's claim based upon claimant's payment to relator as guardian of the children, of the amount of money belonging to the minors which Charles S. Noble, while acting as their guardian, had misappropriated, the bonding company claiming reimbursement out of the property of Charles S. Noble by way of subrogation, under Rem. Rev. Stat., § 978 [P. C. § 8469]. The copy of the claim which is before us does not show that it was approved by relator as guardian, or by the court.

April 14, 1943, relator as guardian of Charles S. Noble filed its final report showing its receipts and disbursements as guardian, and showing the balance of cash and other assets then in the custody of the guardian. The guardian asked that its account be approved and allowed; that allowances be made to the guardian for its services, and for compensation to its attorneys; that the guardian be authorized to turn over to the executor all remaining property in its possession as guardian, and be discharged from its trust as guardian.

The bonding company filed its answer to this final account and report, alleging that it had filed with relator as guardian its claim as above set forth, and that

it had demanded from relator as guardian payment of this claim as a judgment creditor of the estate of Charles S. Noble, an incompetent. The bonding company asked for an order directing relator as guardian to pay its claim out of the funds in its possession as guardian.

Replying to this answer, relator admitted the filing of the bonding company's claim, setting forth no defense thereto, but stating that, at the time the claim was filed, the guardianship estate did not have sufficient cash to pay the claim against the guardian; that the guardian had negotiated with the bonding company in an endeavor to compromise the claim, but that the matter had not been settled nor the claim paid during the lifetime of Charles S. Noble, and that upon his death the right of relator as guardian to pay claims against the guardianship estate had ceased; and that the bonding company's claim must be presented to the executor of Mr. Noble's will.

The matter having come on regularly for hearing before the court, upon the issue presented by the pleadings above referred to, the court found that relator as guardian of the incompetent had in its possession sufficient funds to pay the bonding company's claim, and that this claim was a lawful and valid claim against the guardianship estate. The court then ordered relator as guardian to pay forthwith the bonding company's claim, and that, after paying the claim in full and filing a receipt showing such payment, relator as guardian should apply to the court for further order disposing of the assets of the guardianship. This order last referred to is the order now before us for review.

In this court, respondent presents by way of demurrer certain questions in connection with relator's right to bring the order complained of before this court for review by way of a writ of certiorari. In this connection, respondent contends that relator, as guardian,

is not the party aggrieved by the order, and for this reason may not bring the order before this court for review. This contention is without merit. Relator is resisting, as guardian, the payment of a claim, contending that the claim may not be paid out of the guardianship estate after the death of the ward. It is the duty of the guardian to protect the estate in his possession from unlawful diminution. It is the guardian's duty, by appeal or writ of review, to bring before this court orders or judgments which he believes will unlawfully diminish the estate in his custody. The fact that the merits of the bonding company's claim were not disputed is immaterial. It is not the claim itself with which we are concerned, but the order of the court directing that the claim be paid by the guardian after the death of the ward, out of funds belonging to the guardianship. The guardian has the right to review this order. *In re Cannon's Estate,* 18 Wash. 101; 50 Pac. 1021; *Thompson v. Weimer,* 1 Wn. (2d) 145, 95 P. (2d) 772. In this connection, respondent cites *In re Maher's Estate,* 195 Wash. 126, 79 P. (2d) 984, 117 A. L. R. 91, and other cases holding that an administrator, as such, may not appeal from a decree of final distribution of an estate. Such questions differ basically from the question here presented, as an administrator is not interested in a decree of distribution which the court, after proper hearing, may enter.

Respondent also argues that relator may not bring the order before this court by way of a writ of certiorari or review, as the remedy by appeal is sufficient. If relator's position is correct, the court, at the time it entered the order complained of, had no jurisdiction over the property of the deceased ward's estate, save to hear and settle the guardian's final account, and, if appropriate, to direct the payment of compensation to the guardian, and make an allowance to the guardian by way of compensation to his attorneys. We

hold that the order in question is properly before us for review.

. Upon the merits, the only question presented is whether the superior court, after the death of a ward, may order the guardian to allow and pay a just claim against the ward's estate, when the ward's will has been admitted to probate, and the executor thereof is ready to proceed with the execution of his trust under the will. The will of the deceased ward in this case must, in any event, be executed and the estate administered.

Prior to the adoption of chapter 156, p. 642, Laws of 1917, the "probate code," the matter of the termination of the guardianship of an insane person by reason of the death of the ward was governed by Rem. & Bal. Code, § 1672, which read as follows:

"In case of the death of any such ward while under guardianship, the power of the guardian shall cease, and the estate descend and be disposed of in the same manner as if said ward had been of sound mind; the guardian shall immediately settle his accounts and deliver the estate and the effects of such ward to his legal representatives."

This section was repealed by § 223, chapter 156, p. 642, Laws of 1917, above referred to. The section of the former law, as above quoted, was merely declaratory of the common law.

In 25 Am. Jur., p. 37, title "Guardian and Ward," § 53, the rule is laid down that

"The relation of guardian and ward is necessarily terminated by the death of either the guardian or the ward.

"After the termination of the guardianship by any of the above-named events, any exercise of legal authority as guardian would be unauthorized and void; but it is still the duty of the guardian, or, if the termination is by his own death, of his personal representatives, to render an account and turn over the property in his hands to the proper person, and the guardianship continues, in a sense, to exist for that purpose only."

The rule is stated to the same effect in 28 C. J., p. 1096, title "Guardian and Ward," § 113.

In Woerner's American Law of Guardianship, pp. 501-2, § 150, it is stated without qualification that the guardianship terminates with the death of the incompetent, and that

" . . . the only power which chancery retains over the committee in such case is, as in case of the termination of the guardianship by the restoration of the ward, to compel accounting and the delivery of the property as the court may direct. . . . The court has no power to adjust the claims of creditors of the lunatic to the estate left by him; but will direct the personal estate to be turned over to the personal representatives of the deceased."

The text cited refers to *Boarman's Case,* 2 Bland (Court of Chancery of Maryland, Brantley's Notes ed. 1885) 85 (93).

In Bancroft's Probate Practice, vol. 4, p. 2268, § 1404, the principle is stated that "the death of the ward necessarily terminates the guardianship."

The present statutory law of this state relating to guardian and ward contains no section analogous to Rem. & Bal. Code, § 1672, *supra.* By Rem. Rev. Stat., § 1575, amended in other particulars and now appearing as Rem. Supp. 1941, § 1575 [P. C. § 9907], it is made the duty of "the guardian of any estate"

"(4) At the expiration of his trust fully to account for and pay over to the proper person all the estate of said ward remaining in his hands.

"(5) To pay all just debts due from such ward out of the estate in his hands, and to collect all debts and demands due such ward, and in case of doubtful debts, to compound the same, and to appear for and defend, or cause to be defended, all suits against such ward."

Respondent relies upon paragraph (5), *supra,* and upon Rem. Rev. Stat., § 1589 [P. C. § 9931], which reads as follows:

"It is the intention of this act that the courts mentioned shall have full and ample power and authority

to administer and settle all estates of decedents, minors, insane and mentally incompetent persons in this act mentioned. If the provisions of this [act] with reference to the administration and settlement of such estates should in any cases and under any circumstances be inapplicable or insufficient or doubtful, the court shall nevertheless have full power and authority to proceed with such administration and settlement in any manner and way which to the court seems right and proper, all to the end that such estates may be by the court administered upon and settled."

The section last quoted has no bearing upon the question here presented, the only question before us concerning the particular proceeding through which the court will act.

Upon the repeal of Rem. & Bal. Code, § 1672, the common-law rule became effective, in the absence of any statutory declaration as to the precise date of termination of a guardianship. The legislative repeal of a statute which is merely declaratory of the common law, in the absence of a new statute stating some other rule, leaves the common law in effect.

In 1 Sutherland Statutory Construction (3d ed.), p. 525, § 2043, the rule is stated as follows:

"However, a right of a common law nature which is further embodied in statutory terms exists as an enforceable right exclusive of the statute declaratory of it, and therefore the right is not expunged by the repeal of the statute."

Paragraph (4) of § 1575, Rem. Rev. Stat., *supra,* is based upon the common-law principle that the guardian's trust expires at the death of his ward, and that, upon the happening of that event, it is the duty of the guardian to account for and turn over to the proper person so much of the ward's estate as remains in his hands. Paragraph (5) of the section, relied upon by respondent, refers only to the duties of the guardian during the lifetime of his ward. Certainly it could not be contended that after the death of a ward the guardian could continue to collect debts due the ward, or

to compound the same, or to defend actions instituted against the ward during the latter's lifetime. The portion of this latter paragraph relied upon by respondent, "to pay all just debts due from such ward out of the estate in his hands," must be construed with the remainder of paragraph (5) as applying only to what might be called the active guardianship during the ward's lifetime.

In this connection, respondent cites *In re Gaddis*, 12 Wn. (2d) 114, 120 P. (2d) 849, a proceeding which involved successive guardianships of the same incompetent. The guardianship was not terminated by the ward's death or restoration to competency. In the course of the opinion, we said, *arguendo*:

"Even upon the death of the ward, or the restoration of his competency, judicially determined, the guardianship is deemed to continue, and jurisdiction to remain in the administering court until the ward's estate has been fully accounted for or restored and finally distributed."

This language is strictly accurate. On the death of the ward or his restoration to competency, the guardian must account concerning his trust, and turn the ward's property over to the person entitled to receive the same, and the guardianship continues for that purpose and that purpose only.

We quoted the above language from the *Gaddis* case in *State ex rel. Nelson v. Superior Court*, 15 Wn. (2d) 407, 131 P. (2d) 144. In the case last cited, a prior guardianship had been terminated by an order of the court discharging the guardian pursuant to a judicial declaration that the ward was competent and had never been incompetent. The cases referred to do not support respondent's position in the case at bar.

Prior to the enactment of the probate code of 1917, *supra*, the statute defining the duties of the guardian of any minor, Rem. & Bal. Code, § 1636, was identical with Rem. Rev. Stat., § 1575, *supra*, with the exception that the older statute was limited in its scope to guar-

dians of minors, while the later section reads: "It shall be the duty of the guardian of any estate."

Prior to the adoption of the probate code of 1917, our law contained one chapter providing for the guardianship of minors and another chapter covering guardianships of idiots and insane persons. The former chapter contained no section corresponding to Rem. & Bal. Code, § 1672 (§ 1631 merely fixing the ages of majority), while the chapter containing the sections governing the guardianships of insane persons contained no section corresponding to § 1636, stating the duties of the guardian of any minor.

By the probate code of 1917, the section last referred to was reenacted, with the single change that it now applies to "the guardian of any estate." It would seem that the legislature by making this change in the statute, deemed that no occasion existed for reenactment of the former § 1672, *supra,* that section being declaratory of the common law, and, as we hold, included in the language of paragraph (4) of Rem. Rev. Stat., § 1575, *supra,* which in 1917 the legislature made applicable to all guardianships.

In the case of *Eisenhower v. Vaughn,* 95 Wash. 256, 163 Pac. 758, this court, in view of Rem. & Bal. Code, § 1672, referring to the guardianship of an insane person, held that "the death of the ward terminated the guardianship, and, upon the appointment of the administrator, the estate passed from the control of the guardian to the administrator." Respondent argues that, in view of the repeal of the section referred to in the case cited, that case is no longer an authority, but we hold that, under the law of this state as now in force, the same principle applies, and that when the court is advised of the death of the ward the guardianship is terminated for all purposes, save an accounting by the guardian and in proper cases the allowance of compensation to the guardian and to his attorney. As stated in the *Eisenhower* case, such compensation,

when allowed by the court, may be paid by the guar-
dian before passing the estate over to the person en-
titled to receive the same.

In the recent case of *Forrester v. Stanford, ante*
p. 224, we held that, upon the death of his ward, it
was the duty of the guardian to account to the court
in the guardianship proceeding. We held that the
guardian's trust terminated with the death of his
ward, citing several of the authorities above referred
to. In the case cited, the matter of the effect of the re-
peal of Rem. & Bal. Code, § 1672, was not argued, and
we have reexamined the question in the light of the
arguments presented in the case at bar. The rule laid
down in the *Forrester* case is correct.

Respondent argues that its rights as a creditor of the
deceased might be better protected if its claim should
be ordered satisfied out of the guardianship estate
rather than be presented to the executor. Such a situa-
tion often arises in cases of creditors of persons not
under guardianship, but the situation is in principle the
same, and, if for any reason a creditor of an incompe-
tent ward does not procure from the guardian payment
of his claim during the lifetime of the ward, his claim
must be presented to the executor or administrator
of the deceased ward's estate.

A situation might arise in which neither the guardian
nor the court had knowledge of the death of the ward,
and different questions might well then be presented.

The order before us for review is reversed.

SIMPSON, C. J., BLAKE, ROBINSON, and GRADY, JJ.,
concur.