*In the Matter of the Estate of* JOSEPH A. EBERLE, *Deceased.*

*R. Bruce Harrod,* for appellant.

*Gerard A. Johnson,* for respondent.

PEARSON, J.—Joseph Eberle died testate in 1964, leaving a large estate in Clallam County, the principal asset of which is a dairy farm. He left surviving him as his heirs a wife, Anna Eberle, and five adult children, namely, three daughters, Mary Nelson, Margaret Lotzgesell, and Clara Carr, and two sons, Edwin Eberle and Frank Eberle.

His will named Frank Eberle and Margaret Lotzgesell as co-executors, who by paragraph 2 of the will were extended the usual nonintervention powers. However, paragraph 11 of the will appears to conflict with the nonintervention powers previously conferred, by providing:

> It is my wish that the Court shall retain jurisdiction of my estate and the probate thereof until full and complete settlement of the said estate has been had. That no Decree of Distribution be issued by the Court until complete payment has been made to all legatees.

Under paragraph 3 of the will, Mary Nelson, Margaret Lotzgesell, and Clara Eberle were bequeathed the sum of $20,000 each. Under paragraph 4 of the will, the surviving spouse, Anna Eberle, was also given a bequest of $20,000 and a right to occupancy of a certain home, situated on the dairy farm.

The testator's two sons, Edwin Eberle and Frank Eberle, were bequeathed one-half each of the dairy farm, given an undivided one-half interest in the dairy herd, and were directed to divide the farm machinery in a fair and equitable manner.

The St. Joseph's Catholic Church of Sequim was given a $2,500 bequest, and the residue of the estate was devised and bequeathed to Frank Eberle, with this proviso, under paragraph 12 of the will:

> [T]he reason for this bequest is because the house on the real estate devised to said son needs remodeling, which will cost a very substantial sum, and, also, said property is in need of outbuildings to make it comparable to the farm bequeathed to my son, EDWIN EBERLE.

Under the codicil to the will, certain stock holdings of the testator were placed in trust for the testator's wife, Anna Eberle, and the income awarded to her for life, and Frank Eberle was given the remainder interest in the stock.

The co-executors were duly qualified and letters testamentary issued on September 15, 1964, and the estate proceeded through administration, largely under the nonintervention powers set forth above, and with some complications which will be set forth below.

During the course of the probate, Edwin Eberle became an incompetent, and his wife, Idy Eberle, was appointed his legal guardian. On June 17, 1968, Idy Eberle filed a petition with the probate court as guardian of Edwin Eberle, challenging certain actions which had been taken by the co-executors, seeking their removal and/or replacement for waste, mismanagement, fraud and neglect, and seeking an accounting of the assets of the estate.

The petition was heard on oral testimony on December 12, 1968, and was subsequently denied by order dated January 30, 1970. The order contained findings to the effect that the co-executors had acted in good faith in the management of the estate and certain challenged actions which had been taken during the course of probate were approved. This appeal has been taken from that order.

To understand the complications of administration, a more complete chronology is necessary, as follows:

(1) On September 15, 1964, the co-executors sought and received an order authorizing Frank Eberle to carry on the dairy business for 1 year or until further order of the court.

(2) Subsequent to the filing of the inventory and appraisement, which showed total assets of $379,144.79, a petition for order of solvency was filed, showing that the funeral expenses had been paid, and that a previously granted family allowance to the surviving wife was current and that except for expenses of administration, there were no other debts and the estate was fully solvent. An order of solvency was accordingly entered on February 14, 1966.

(3) Prior to the entry of the order of solvency, it appeared that the surviving wife, Anna Eberle, was unhappy with the cash bequest of $20,000 left her by the will and threatened to assert her community property rights and take against the will. Accordingly, a compromise was achieved and approved by the court on February 28, 1966, whereby the widow settled her claim for assets worth in excess of $70,000, which, according to the terms of the settlement, was to be paid free of tax liability. An order directing premature distribution to Anna Eberle was entered on that same date. The payment of this settlement took a large percentage of the available liquid assets of the estate.

(4) While negotiation with the widow was going on, other discussions were under way with the state and federal taxing authorities and with the beneficiaries of the other cash bequests under the will. The co-executors decided that since the widow had received her bequests free of taxes, all of the other cash beneficiaries also ought to receive their bequests free of taxes. In order to pay these sums and the tax liability, it was decided by the co-executors that the dairy farm should be mortgaged to raise the cash.

One of the key factual disputes in the case is whether Edwin Eberle or his counsel consented to this course of action or to the payment to the legatees free of tax liability. Testimony is in dispute on this issue. Finally, however, the executors did mortgage the real property and shortly thereafter the cash bequests were paid to them, tax free.

(5) As might be expected, subsequent to the filing of the federal and state tax returns, the federal government contested the appraisal value of various estate assets and after lengthy negotiations both the state and federal authorities assessed additional tax claims. To meet this liability, the executors undertook to again mortgage the real property, paying the first mortgage and the additional taxes from the proceeds. Prior to the execution of this latter mortgage, Edwin Eberle was declared incompetent and his wife was named his guardian.

(6) As stated above, the dairy farm was to pass to Frank and Edwin after being physically divided. It had, of course, been worked as one farm during the life of Joseph Eberle, and thus was equipped with a single set of dairy facilities. When relations between Frank Eberle and Edwin Eberle commenced to deteriorate, the co-executors decided to provide Frank Eberle's half of the farm with dairy facilities, so that it could be used independently. This was done, claim the executors, under the residuary clause of the will, which had expressed the wish of the testator that improvement to Frank's part of the farm to make it equal with Edwin's facilities be made from the residue of the estate. However, the situation detailed above meant that no residue would be left. In any event, the estate expended in excess of $11,000 on capital improvements to Frank Eberle's half of the farm.

In the order appealed from, the trial court decided that the proper resolution of the current difficulties of the estate was to leave the estate open. The operating revenues of the farm properties are to be used to pay off the mortgage indebtedness. In effect then, the estate will remain open and neither Frank nor Edwin will receive distribution of their respective interests in the farm property until a substantial mortgage indebtedness has been paid from the operating revenues.

When we examine this resolution of the problem, several questions trouble us. We think the declaration in paragraph 11 of the will, expressing the testator's wish that the court shall retain jurisdiction of his estate and the probate until complete settlement and distribution has been made, is clearly at odds with the nonintervention concept as set forth in RCW 11.68.010-.040.

Washington has long followed the arguable, ill-starred concept[1] that the court loses jurisdiction in a nonintervention will after the order of solvency is entered. *Miller v. Borst,* 11 Wash. 260, 39 P. 662 (1895); *State ex rel. Jakobsen v. Superior Court,* 127 Wash. 583, 221 P. 608 (1923); *In re*

---

[1] *See* Fletcher, *Washington's Non-intervention Executor—Starting Point for Probate Simplification,* 41 Wash. L. Rev. 33 (1966).

*Estate of Beard,* 60 Wn.2d 127, 372 P.2d 530 (1962). As is pointed out in *Gwinn v. Church of Nazarene,* 66 Wn.2d 838, 405 P.2d 602 (1965), this loss of jurisdiction is a somewhat limited concept, but where a provision like paragraph 11 exists, we think that it is sufficient to take the document out of the nonintervention will statute.

However, though we think that the will in question should not have been treated as a nonintervention will because of paragraph 11, all parties appear to have consented to that type of administration. The trial court was of the opinion it was dealing with a nonintervention will and all parties agreed with this contention. No error has been assigned to any determination that this instrument is a nonintervention will. On oral argument, the parties reaffirmed their belief in this position. We will, therefore, assume that up to the time appellant's petition was filed, any objection to nonintervention administration had been waived.

Even under nonintervention administration, however, the executors are under a trust obligation to carry out the testamentary directions of the testator and follow the general laws of administration when such directions are lacking or insufficient. *See* RCW 11.68.030.

This brings us to the first challenge made by appellant, namely whether or not the federal and state tax liabilities were properly assessed in this case. To some degree, this is two questions, because the state and federal assessment schemes vary in some significant ways, as we will discuss below. However, both the tax questions may involve construction of the same paragraph 11 of the will set out above.

The trial court found that paragraph 11 was a direction by the testator that all the bequests be paid free of tax liability and was sufficient to override the usual statutory scheme of assessing tax liability. We cannot agree. However, this disagreement is not necessarily dispositive of the point, since as a matter of fact the trial court may find that Edwin Eberle or his counsel consented to payment of the bequests, tax free. The findings entered by

the trial court do not resolve this factual question. We thus direct the trial court to enter a finding of fact, after hearing any further evidence it deems necessary to its decision, on whether or not Edwin Eberle consented to the payment of the legatees, free of tax liability. In determining whether he did voluntarily agree to accept more than his statutory tax liability, the trial court should also consider whether or not Edwin was mentally competent to make such an agreement, if any be found.

If it is found as a matter of fact that Edwin competently agreed that the bequests were to be paid free of tax liability, then we agree that such agreement ought to be upheld. If it is found that Edwin either did not consent or was incompetent to do so, then we must once again set about construing the same paragraph 11, set out above, and consider the result, together with the statutory scheme for taxation of estates, both state and federal.

■ Initially, we note that the Washington estate tax system lays an excise tax on the privilege of receiving property by inheritance. This tax is to be borne by the successor. *In re Estate of Birkeland,* 56 Wn.2d 441, 353 P.2d 667 (1960). Absent a showing of some intent of the testator to the contrary, then, the tax will fall pro rata upon the beneficiaries, according to the amount of the total taxable estate that they receive. RCW 83.08.060; *In re Estate of Henderson,* 46 Wn.2d 401, 281 P.2d 857 (1955). The federal tax is an estate tax. The tax is one upon the transfer of property by the decedent upon his death. The ultimate burden of this tax is determined according to the law of the several states.

In Washington, absent a specific direction from the testator, the federal tax burden falls on the corpus of the estate. *In re Estate of Williamson,* 38 Wn.2d 259, 229 P.2d 312 (1951); *In re Estate of Machlied,* 60 Wn.2d 354, 374 P.2d 164 (1962). Again, however, the specific express intent of the testator may shift the burden of the tax. Such expression of intent has long been a key factor in resolution of estate disputes. *See In re Estate of Lotzgesell,* 62 Wash. 352,

113 P. 1105 (1911). The testator may direct the federal tax liability to fall on such part of the estate as he wishes. *In re Estate of Miller*, 51 Wn.2d 87, 316 P.2d 124 (1957).

From this analysis, it can be seen that to resolve a question about tax liability, it is necessary to construe paragraph 11. We cannot agree with the trial court that this paragraph constitutes a direction that all the legatees be paid in full, free of tax liability. We think that the paragraph expressed nothing more than the testator's desire that the court supervise his estate and see to it that his wishes be carried out to the degree that assets of the estate were sufficient to do so. In cases where it has been found that the testator specifically directed payment in full or payment free of taxes, those directions were specific and were generally incorporated in the specific bequests under consideration. *In re Estate of Miller, supra; Seattle First Nat'l Bank v. Macomber*, 32 Wn.2d 696, 203 P.2d 1078 (1949). Here the clause in question is a general one in wording and is found at the end of the will, far from the dispositive provisions. We find that this clause is not a specific enough statement to overcome the well-established usual rules regarding tax liability. If a testator desires to do so, we think it is not too much to request of him to require that he be specific in expression of his desires.

Since paragraph 11 does not serve to overcome the usual rules of law regarding assessment of tax liability, we must attempt to apply these rules to this case in the event the factual issues may be decided in appellant's favor. As noted above, the state tax burden should be applied pro rata to the various beneficiaries under the will. The federal tax, in the Washington scheme of assessment, falls on the corpus of the estate. This has been interpreted to mean that the federal tax falls first on the residue of the estate, other things being equal. *Seattle First Nat'l Bank v. Macomber, supra; In re Estate of Machlied, supra.* As we discussed above, the testator here manifested no intention as to where tax liability is to lie in this case, so we will follow the usual pattern. Some suggestion has been raised in this

case that even if the accounting of the estate is redone, there will be insufficient funds in the residue to pay the federal tax. Should this occur, we propose that the trial court assess the tax liability remaining after exhaustion of the residue to the legatees and devisees in proportion to the value received, prorating the excess liability as is done with state taxes. *See In re Estate of Roth,* 68 Wn.2d 297, 412 P.2d 766 (1966); RCW 11.56.150 and .180. The practical result of such a course will be, we realize, to force legatees who have received partial distributions to return some funds to the estate. Though this will entail some complications, we can find no warrant in law to do otherwise. Even treating the will as a nonintervention one, there is nothing in it to indicate that the executors were warranted in disregarding the statutory scheme for assessment of tax liability. Thus, we direct that the tax burden be reassessed as stated above, unless the trial court finds as a matter of fact that consent was validly given to the payment of such bequests, free of tax liability.

In conjunction with this tax matter, the related question has been raised as to whether the rents, issues and profits of the farm have been misapplied in using them to pay the mortgage. Plaintiff cites RCW 11.04.250 in support of the contention that the rents, issues and profits of the farm properly ought to go to the devisees thereof. The rents, issues and profits of land do vest in the legatee of real property by terms of this section. *In re Estate of Patrick,* 195 Wash. 105, 79 P.2d 969 (1938). This vesting is subject to the trusteeship of the executor during the probate of the estate. *In re Estate of Peterson,* 12 Wn.2d 686, 123 P.2d 733 (1942); *In re Estate of Henderson,* 46 Wn.2d 401, 281 P.2d 857 (1955). However, by terms of the statute, this vesting is subject to the debts, family allowance, expenses of administration, and other charges for which the real estate is liable. *See In re Estate of Binge,* 5 Wn.2d 446, 105 P.2d 689 (1940).

If the mortgage in this case was placed upon the real property to obtain funds to pay those expenses (taxes and

other expenses of administration) enumerated above, then we think that the rents, issues and profits of the real property have properly been applied to payment of the debt secured by it. This is again a factual question which may require resolution. However, we think that if as a matter of fact the trial court finds that Edwin Eberle competently consented to the payment of bequests free of tax, he necessarily tacitly consented to the placing of the mortgage to secure funds necessary to do this. Thus, if such consent is found as to paying bequests, we need go no further.

If such consent be not found, then it is necessary to consider and factually determine what the proceeds of the obligation secured by the mortgage went to pay.[2] If the mortgage funds were in fact used to pay debts, family allowance, expenses of administration or other charges for which the estate is liable, and the rents, issues and profits were not so employed but were rather expended in payment of the specific bequests, then the estate must account for them to the benefit of Frank and Edwin Eberle equally. *In re Estate of Henderson, supra.* Contingent on its ruling on the question of consent, the trial court should make findings of fact, after hearing any further evidence it deems necessary, on this issue and then proceed as outlined above.

This brings us to the question of whether or not capital improvements made on the co-executor's half of the farm were properly made. We begin by considering the residuary clause of the will.[3] In that clause, the testator indi-

---

[2] In this regard, also consider RCW 11.76.110. Computations made should consider that the estate corpus was liable for the enumerated debts and expenses before bequest could be paid.

[3] Paragraph 12 reads:

"I hereby give, devise and bequeath unto my said son, FRANK PHILIP EBERLE, all the rest, residue and remainder of all property of any nature and description in my estate, both real and personal, and wherever located, that shall belong to me or subject to my disposal at the time of my death; the reason for this bequest is because the house on the real estate devised to said son needs remodeling, which will cost a very substantial sum, and, also, said property is in need of outbuildings to make it comparable to the farm bequeathed to my son, EDWIN EBERLE."

cates his purpose in leaving the residue to Frank was that Frank might thereby make needful improvements to his half of the farm. RCW 11.48.025, which does not apply to nonintervention wills, provides a useful expression of legislative intent to allow continuation of a decedent's business and, if necessary, supervise improvements thereto. In the case at bar, an order was entered allowing continuation of the dairy business. These facts lead us to conclude that there was authority in the co-executors to use estate funds to improve Frank's portion of the farm. As a matter of fact, the trial court seems to have determined that the improvements made were proper. If this is the court's finding when it formally considers findings on this matter, then we think that these expenditures are justified by the express intent of the testator.

Finally, we think it necessary to say a few words about how this estate ought to proceed until the time when it is finally closed. First, since we have decided that the will is questionable as to the extent of nonintervention powers, and in view of the difficulties already provoked by it, we think the trial court should assume full control over the estate, as is the practice where the testator has not granted nonintervention powers.

Next, the trial court should order the estate to forthwith retain an accountant who is neither related to any of the parties[4] nor interested in the outcome of this litigation. The accountant should be provided with all records of all transactions of the estate and should undertake a full audit of the estate and should then present a complete accounting for the trial court's consideration. This step, which we realize will involve some considerable trouble and expense, is necessary both to assure all parties of the propriety of the conduct of the co-executors and more importantly because it appears to us that the proposed final accounting submitted to the trial court and the inventory and appraisement entered in this matter cannot be readily reconciled. To

---

[4]The accountant who has been used is the husband of Margaret Lotzgesell.

avoid the suggestion of wrongdoing, we would have an independent audit. *See* RCW 11.76.050-.060. Finally, we would have the trial court enter findings of fact as noted above.

Reversed with instructions.

PETRIE, C.J., and ARMSTRONG, J., concur.