[No. 803-41556-1.    Division One—Panel 2.    January 17, 1972.]

*In the Matter of the Guardianship of* BEATRICE MAYOU.

*Slade Gorton, Attorney General,* and *Paul J. Murphy, Assistant,* for appellant.

346

■■■■■■■■■■■■■■■■■

*Benson & Stege* and *Theodore H. Olson,* for respondent.

JAMES, J.—On February 26, 1959, Beatrice Mayou was found to be mentally incompetent and was committed to one of the state's hospitals. A guardianship for her estate was established on March 24, 1959. On March 28, the state filed a creditor's claim for the cost of her care to the date of the claim. The claim form advised that: "This claim is also filed as a CONTINUING CLAIM to cover all charges which will accrue at the statutory rate during the time BEATRICE MAYOU is confined at the WESTERN State Hospital."

On the same day it filed its "continuing claim," the state, pursuant to RCW 11.92.150, filed a request for special written notice of proceedings in the administration of the guardianship estate. Notice of "[a]ll interim orders, and all final orders, including orders closing the guardianship estate, and discharging the guardian" was specifically requested.

The guardian of the estate filed annual reports thereafter, and on each occasion the order approving the report authorized him to pay the state's charges for his ward's hospitalization. He paid the state's charges until 1963, but made no payments thereafter. Nevertheless, the state continued to provide hospitalization for Beatrice Mayou until her death on October 3, 1967.

On October 19, 1967, Beatrice Mayou's will was admitted to probate. The executor (who had been guardian) caused notice of his appointment and qualification and notice to creditors to be published as provided by RCW 11.40.010.

On December 15, 1967, the guardian's final report was approved, and he was directed to transfer the balance of the funds on hand in the guardianship estate to himself as executor of the estate of Beatrice Mayou, deceased. No notice was given to the state concerning the termination of the guardianship estate.

The state failed to file its claim in the probate proceedings.

In 1969, by petition filed in both the guardianship and the

probate proceedings, the state instituted this action. The state seeks to recover the sum of $10,882.63, the balance due for the care of Beatrice Mayou during the period of her confinement in the state's hospital. The state asks that the order approving the guardian's final account be set aside; that guardianship funds be recalled from the estate; and that the guardian be ordered to pay the state's claim.

The state contends that (1) failure to give notice as contemplated by RCW 11.92.150 renders the order terminating the guardianship void; (2) even absent statutory provisions, the failure to give notice would constitute a violation of due process, thereby rendering the order terminating the guardianship void; and (3) the guardian should be equitably estopped from invoking the protection of RCW 11.40.010, the nonclaim statute.

The trial judge rejected the state's petition. We affirm.

█ The reason the state cannot prevail is that the death of a ward terminates his guardian's powers. It is "the common-law principle that the guardian's trust expires at the death of his ward, and that, upon the happening of that event, it is the duty of the guardian to account for and turn over to the proper person so much of the ward's estate as remains in his hands." *State ex rel. Nat'l Bank of Commerce v. Frater*, 18 Wn.2d 546, 553, 140 P.2d 272 (1943). Those creditors whose claims have not been paid by the guardian before the death of his ward must submit their claims to the decedent's personal representative.

The common-law principle that a guardian's trust expires at the death of his ward is now codified in Washington as RCW 11.88.140(1) which provides that: "A guardianship is terminated . . . (c) By the death of the incompetent." RCW 11.88.140(3) also provides that:

When a guardianship terminates by death of the incompetent, the guardian of the estate may proceed under RCW 11.88.150, but the rights of all creditors against the incompetent's estate shall be determined by the law. of decedents' estates.

RCW 11.88.150 provides that upon the death of an incompetent *intestate,* his guardian has power under his guardianship letters, subject to the direction of court, to continue administering the estate as the estate of the deceased incompetent. However, in such case notice to creditors shall be published "in the manner provided in RCW 11.40.010," and "[a]ll claims which are not filed within four months after first publication shall be barred against the estate."

■ RCW 4.16.160,[1] which exempts the state from the operation of the general statutes of limitation, affords the state no relief from the "positive prescription" of the probate code's nonclaim statute, RCW 11.40.010. *State v. Evans,* 143 Wash. 449, 255 P. 1035, 53 A.L.R. 564 (1927). In *Evans,* the state, as here, sought to recover for the hospitalization of a deceased incompetent but failed to file a timely claim in probate. The court there discerned

a legislative intent to not merely withhold the remedy, but to take away the very right of recovery out of the property left by a decedent, by failure on the part of a claimant to present his claim as our statute provides.

*State v. Evans, supra* at 452.

■ Nor, as the state urges, can equity's extraordinary powers be utilized to sheathe the cutting edge of probate's nonclaim statute. In *Davis v. Shepard,* 135 Wash. 124, 237 P. 21, 41 A.L.R. 163 (1925), a minor ward, upon reaching his majority, sought to recover misappropriated funds from his deceased guardian's estate. Having failed to file a timely claim, he invoked equity's doctrine of equitable estoppel. Again, the court recognized legislative intent and held that:

In keeping with the legislative spirit, this court has made no exceptions to the statute, and to now do so on the

---

[1] "The limitations prescribed in this chapter shall apply to actions brought in the name or for the benefit of any county or other municipality or quasimunicipality of the state, in the same manner as to actions brought by private parties: *Provided,* That there shall be no limitation to actions brought in the name or for the benefit of the state, and no claim of right predicated upon the lapse of time shall ever be asserted against the state: . . ."

theory of equitable estoppel would be to drive an entering wedge which will tend to confusion and delay. If fraud will prevent the bar of the statute being raised, there is no reason why infancy, non-residence, insanity and other disabilities may not have the same effect, and estates can never be closed and definitely distributed, for, years after the distribution, one who has been guilty of no laches may appear with a claim based on fraud, etc., and establish his rights. Hardship is bound to result in some instances whichever rule is followed, but in the long run it would seem that a strict compliance with the statute with no estoppel against its use as a bar is the more safe and sensible rule.

*Davis v. Shepard, supra* at 132.

In *In re Rhodes,* 196 Wash. 618, 83 P.2d 896 (1938), the state again sought to recover its charges for hospitalization provided for an incompetent, and again, notwithstanding its failure to timely file its claim in probate. No doubt mindful of the ruling of *State v. Evans, supra,* the state ignored the probate proceeding and sought instead to impress an equitable lien upon the estate's only substantial asset. That asset was a residence then possessed by the decedent's son who was also the executor of the decedent's estate and the primary beneficiary under his mother's will. In denying the state's claim, *Rhodes* held that only the incompetent and her estate were legally responsible for the state's charges; that upon the death of the incompetent the state could look only to the incompetent's estate; that the incompetent's estate was liable only for those claims which were timely filed; and that no equitable lien in favor of the barred claim followed the estate property out of probate.

The state necessarily had actual notice of the death of its hospitalized patient. Notice of the closing of the guardianship might further have alerted the state. But, whether compelled by constitutional due process or by statutory mandate, notice to the state of the hearing on the guardian's final report would not have enabled the state to process its claim in the guardianship estate.

The state had the same notice that every other creditor

350

had under the probate nonclaim statute. The state's dilemma arises from its failure to file a timely claim in probate, and not from lack of notice of the closing of the guardianship estate.

For the foregoing reasons, the judgment is affirmed.

FARRIS, A.C.J., and SWANSON, J., concur.