[No. 1312-42113-1.    Division One—Panel 1.    March 12, 1973.]

*In the Matter of the Estate of* LOUISE WILSON, *Deceased.*
PEOPLES NATIONAL BANK OF WASHINGTON *et al., Appellants,*
v. HARRY G. LIVINGSTON *et al., Respondents.*

*Macbride, Sax & MacIver, Alan H. Kane, Cook, Flanagan & Berst*, and *George S. Cook*, for appellants.

*Hoover, Lind & Parkhurst* and *Fred N. Hoover*, for respondents.

CALLOW, J.—Peoples National Bank, trustee under a testamentary trust, and the Second Church of Christ Scientist, the residual distributee of the trust after the death of the life beneficiaries, appeal from the order approving the final account of the co-executors.

Louise Wilson, a widow, her husband having died in 1960, executed her nonintervention will in 1965 and died in 1967. The will was admitted to probate shortly after her death, and the respondents qualified as co-executors. The inventoried assets of the estate were appraised at $755,191.61.

The will provided for specific bequests totaling $90,000. The total was comprised of four bequests of $10,000 each to three sisters and a brother, four bequests of $10,000 each to the appellant church and three of its affiliates, $5,000 to a nephew and $5,000 to Harry G. Livingston. The remainder of the estate was left in trust with the appellant bank for the following purposes:

1. To provide $20,000 for the education of two minor children of a nephew of the decedent, a $10,000 fund being established for each beneficiary with the unused portion of each fund to be distributed to a beneficiary when he reached 30 years of age; and

2. To provide a moderate, but adequate living for the three sisters, the brother and a sister-in-law of the deceased.

One of the beneficiaries of the trust, the sister-in-law, predeceased Louise Wilson, and another of the trust beneficiaries, a sister, died in June 1970 before final distribution.

The will further provided that after the death of the last to die of the individual beneficiaries who were to be supported during their lives, the then remainder, if any, of the corpus was to be distributed to the appellant church.

The inheritance tax due and owing the state was computed at $43,094.25, of which $38,844.25 was attributed to class B beneficiaries (RCW 83.08.030), and the balance to class C beneficiaries (RCW 83.08.040). The federal estate tax was determined to be $91,472.40 excluding interest.

The assignments alleging error challenge (a) the failure to impose the burden of the state inheritance tax upon the specific beneficiaries, (b) the placing of nearly all of this burden of state inheritance tax upon the residue of the estate and authorizing the trustee to invade corpus to pay state inheritance tax, (c) the increase in the federal estate tax resulting from the ultimate imposition of the substantial burden of the state inheritance tax upon the charitable remainder to the church, (d) the consideration and authorization to the trustee to invade corpus to pay support to the

sisters, brother and sister-in-law from the testatrix' death to the actual funding of the trust, (e) the payment of certain creditors' claims, and (f) the disposition made of an item of furniture by the co-executors.

The trial court held that the testatrix probably was unaware of the magnitude of her estate when she executed her will and that it was not her intention that the income provided to certain beneficiaries under the remainder trust should pay the inheritance tax nor that certain specific legacies should bear this burden. The trial court concluded that the co-executors properly paid a portion of the state inheritance tax out of the estate before computing the distributions to be made. The will itself is silent as to these matters. The appellants object to the payment of $36,124.25 of the state inheritance tax from the residue.

A testator may place the burden of state inheritance and federal estate taxes on whatever portion of his estate he chooses. *In re Estate of Miller*, 51 Wn.2d 87, 316 P.2d 124 (1957); *In re Estate of Eberle*, 4 Wn. App. 638, 484 P.2d 478 (1971).

*In re Estate of Henderson*, 46 Wn.2d 401, 281 P.2d 857 (1955), stated at page 402:

> The wishes and intention of the testator must govern the distribution of an estate. He could provide that certain bequests and devises be made free and clear of any claim for taxes. *Seattle-First National Bank v. Macomber*, 32 Wn. (2d) 696, 703, 203 P. (2d) 1078 (1949). However, the intention to make such a provision must be expressed in the will. A mere statement that the testator desires his taxes to be paid does not clearly express an intention to charge his estate with taxes imposed by law upon a beneficiary.

A testator may insulate certain bequests and devises from taxes and require other legacies to carry the tax burden totally or in part. Unless the intent of the testator is specifically expressed, however, the imposition of state inheritance taxes and federal estate taxes is governed by law. *In re Estate of Eberle, supra.* The probate court may not presume an intent that was unexpressed or compensate for

the omission of a testator. The estate must be distributed pursuant to the intent expressed in the will or, if the will does not express an intent, according to the law which fills such a vacuum. Each segment of the dispository plan of the testator, each devise and each bequest is an interrelated part of the whole. A court-permitted release of any legacy from the payment of taxes imposed by law upon that legacy necessarily must impose that responsibility on another portion or portions of the estate. This may not be done. The inheritance tax must be imposed upon and apportioned between the beneficiaries within each class according to the amount receivable by each beneficiary. RCW 83.08.

The state inheritance tax is upon the inheritance of each heir or legatee. *In re Estate of Birkeland,* 56 Wn.2d 441, 353 P.2d 667 (1960); *In re Estate of Plasterer,* 49 Wn.2d 339, 301 P.2d 539 (1956). It is an excise tax upon the property to be received by the heir and deductible as a charge upon each bequest. *In re Estate of Patten,* 69 Wn.2d 427, 419 P.2d 157 (1966); *In re Estate of Birkeland, supra.* The responsibility for deduction and payment of the state inheritance tax rests on the executor. He may not deliver any legacy until he has collected the tax thereon, and a decree of distribution may not be entered until the inheritance tax is paid or the supervisor of the inheritance tax division satisfied. *In re Estate of Hickman,* 41 Wn.2d 519, 250 P.2d 524 (1952); RCW 83.44.060 and 83.44.110.

The federal estate tax, on the other hand, is a tax upon the total estate of the decedent payable as an expense of administration and does not fall upon the particular devise, bequest or share of each beneficiary. The ultimate burden of the federal estate tax is to be determined in accordance with state law, and in the absence of a statute or a contrary provision by the decedent, is to be paid out of the residuary estate. *Seattle-First Nat'l Bank v. Macomber,* 32 Wn.2d 696, 203 P.2d 1078 (1949). The federal estate tax is upon the interest of the decedent in his estate which terminated upon his death. *In re Estate of Birkeland, supra.*

*In re Estate of Machlied,* 60 Wn.2d 354, 374 P.2d 164 (1962), said at page 357:

Regarding the payment of the federal estate tax, this court held, in *In re Williamson's Estate,* 38 Wn. (2d) 259, 229 P. (2d) 312 (1951), that, in the absence of a statutory provision or a direction of the testator to the contrary, the burden of the tax is upon the corpus of the estate. In the situation presented in this case the tax is payable first from the residuary bequest of personal property and then from the specific devises.

The case of *In re Estate of Lloyd,* 53 Wn.2d 196, 332 P.2d 44 (1958), illustrates the method of imposing the state inheritance tax at the applicable rate on the total amount of the bequests to a particular class of beneficiaries and then apportioning that amount of tax pro rata upon the beneficiaries within the class. *See also In re Estate of Henry,* 189 Wash. 510, 66 P.2d 350 (1937). The state inheritance tax must be computed upon the total estate contemplated as passing to class A, B, or C beneficiaries under RCW 83.08 without deducting the federal estate tax as an indebtedness of the estate prior to the computation. *In re Estate of Carlson,* 61 Wn.2d 359, 378 P.2d 435 (1963); *In re Estate of Heidner,* 7 Wn. App. 488, 500 P.2d 1284 (1972); RCW 83.04.013.

A transfer of property to a charitable use is exempt from state inheritance taxation under RCW 83.20.010. *See In re Estate of McIntire,* 178 Wash. 81, 34 P.2d 432 (1934); *In re Estate of Foss,* 114 Wash. 681, 196 P. 10 (1921); Annot., 168 A.L.R. 1222, 1259 (1947). The church was entitled under that statute to have its interest in the estate exempt and free of the imposition of state inheritance tax. The establishment of the proportion of the remainder trust that will be required for the support of the persons previously designated, and the balance, if any, that will be exempt as ultimately available for distribution to the church for charitable use has not been presented to us. This problem remains to be settled by the co-executors as does a similar concern arising under Int. Rev. Code § 2055. *See* 4 J. Rabkin

& M. Johnson, *Federal Income, Gift and Estate Taxation* §§ 59.07, 59.08 (1972).

The computation and imposition of the taxes should have been accomplished within this framework. It was improper to impose any of the state inheritance tax burden to the class B beneficiaries upon the class C beneficiaries. The approval of the final account must be set aside; the co-executors must recompute and reapportion the state inheritance and federal estate taxes pursuant to the rules delineated; and they must claim a refund of any taxes improperly paid and discharge their responsibility to the trustee and the residual distributee.

RCW 11.40.010 provides for the publication of notice to creditors, requires creditors to file claims against the deceased within 4 months of the date of first publication and provides that if a claim is not filed within this time, it shall be barred. Nonintervention executors are required to publish notice to creditors, in the manner required of other personal representatives (RCW 11.68.010) and may not honor a claim that is not filed timely. *First Security & Loan Co. v. Englehart,* 107 Wash. 86, 181 P. 13 (1919); *Foley v. McDonnell,* 48 Wash. 272, 93 P. 321 (1908).

Compliance with the statute is mandatory. A debt which accrued during the lifetime of the decedent is barred and may not be paid unless a claim for its payment was filed within the 4-month period. *Ruth v. Dight,* 75 Wn.2d 660, 453 P.2d 631 (1969); *In re Estate of Dorey,* 62 Wn.2d 152, 381 P.2d 626 (1963). Equitable considerations may not mitigate the strict requirements of the statute where a timely claim has not been filed by the creditor or by the executor. *In re Mayou,* 6 Wn. App. 345, 492 P.2d 1047 (1972); *In re Estate of Hayes,* 2 Wn. App. 961, 471 P.2d 691 (1970).

A debt which accrues as a result of the death of the decedent, *i.e.,* funeral and burial expenses, or which accrues thereafter as an expense of administration, is not against "the deceased", and a claim need not be filed in order for the executor to be authorized to pay a claim of this character. RCW 11.40.010, in its present form, permits

an executor to pay such claims. *See* J. Steincipher, *Washington Probate Practice and Procedure,* ch. 11.40.010, at 244-45 (1966).

Among the principal assets of the estate were substantial stockholdings in two closely held corporations. One of the corporations timely filed a creditor's claim for an amount representing cash advances to the predecedent husband and to the decedent. The record is confused as to the dates on which these advances were made from this corporate account. The other corporation timely filed a claim for cash advanced to the predecedent husband prior to his death in 1960. No claim was filed in his estate for this advance. However, there was testimony, amounting to substantial evidence, that these loans were made by checks issued from the corporate accounts and carried as overdrafts to these accounts and that activity continued in the accounts until the death of the testatrix.

The court found that the corporations were dissolved before the entry of the final account by the co-executors "with the estate gainfully sharing in their dissolution." He also found that these accounts were carried on the books of each corporation as open, live and current and were reviewed from time to time by the three shareholders. He further found that claims for these advances were filed, approved by the court and paid in due course in the administration of the estate. There is reference to the corporate accounts which were designated as exhibits "A", "B", and "C" but which were not included in the record on appeal. Under the circumstances, the findings of the trial court must stand.

A cause of action on an open account accrues at the time of the entry of the last item in the account. *See* RCW 4.16.150; *J.A. Campbell Co. v. Holsum Baking Co.,* 15 Wn.2d 239, 130 P.2d 333 (1942); *Hamlin v. Flick,* 130 Wash. 126, 226 P. 484 (1924); *Blom v. Blom Codfish Co.,* 71 Wash. 41, 127 P. 596 (1912). The trial court having found that the accounts were open up to the testatrix' death, a claim on them could not be barred by a statute of limitations.

The trial court concluded that the trustee was obligated to pay support to the individual beneficiaries under the remainder trust from the date of the testatrix' death to the funding of the trust 14 months later. The co-executors computed the federal estate tax on this basis also. The trustee bank and the church argue that this decision enlarged the taxable estate by increasing the amount of support to be paid and consequently reduced the ultimate charitable bequest of the church.

■ Support payments provided for beneficiaries of a testamentary trust are payable from the date of the testator's death. *In re Estate of Williamson*, 38 Wn.2d 259, 265, 229 P.2d 312 (1951), quoted Annot., 158 A.L.R. 442 (1945), as follows:

> "The general rule is that when property is devised or bequeathed in trust to pay the income to a person for life, or for a limited time, he is entitled to such income from the date of the death of the testator, unless the testator has indicated an intention that the income shall not begin until a later date."

While the quote concerns payments of "income", the rationale of the rule applies equally to payments of support, including support which may be paid, in part, from the principal of a testamentary trust. *See In re Bowen*, 240 So. 2d 318 (Fla. App. 1970); *In re Estate of Pierpont*, 10 Utah 2d 49, 347 P.2d 1114 (1959); *In re Estate of Riemcke*, 80 Wn.2d 722, 497 P.2d 1319 (1972); Restatement (Second) of Trusts § 234 (1959); G. Bogert, *Trusts and Trustees* §§ 816, 817 (2d ed. 1962). The approval of the payment of support from the date of death was proper.

■ The executors disposed of certain furniture either by gift or for less than fair value. Under RCW 11.48.030, an executor is chargeable in his accounts for the whole estate of a deceased. The executor is an officer of the court and in a fiduciary relationship to those beneficially interested in the estate. He is obligated to exercise the utmost good faith and utilize the skill, judgment and diligence that an ordinarily cautious and prudent person would employ in the

management of his own affairs. *Hesthagen v. Harby*, 78 Wn.2d 934, 942, 481 P.2d 438 (1971); *In re Estate of Peterson*, 12 Wn.2d 686, 733, 123 P.2d 733 (1942). He must perform his duties not only for the benefit of the legatees but must also protect the estate from invalid and doubtful claims, *In re Estate of Shea*, 69 Wn.2d 899, 421 P.2d 356 (1966), while protecting the rights of valid creditors. *Kerns v. Pickett*, 49 Wn.2d 770, 306 P.2d 1112 (1957). It is his duty to settle an estate as quickly as possible but without sacrifice to the estate, *National Bank of Commerce v. Peterson*, 179 Wash. 638, 644, 38 P.2d 361 (1934), and he is liable for any breach of his responsibility which causes loss to another. *Hesthagen v. Harby, supra.* His trust must be fulfilled with conscientious fidelity whether his charge is large or small.

The disposition below is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

HOROWITZ, C.J., and WILLIAMS, J., concur.

Petition for rehearing denied July 17, 1973.

Review denied by Supreme Court August 28, 1973.